STATEWIDE HEALTH COORDINATING COUNCIL
et al *v.* GENERAL HOSPITALS OF HUMANA,
INC. et al

83-83                                                    660 S.W.2d 906

Supreme Court of Arkansas
Opinion delivered October 24, 1983
[Rehearing denied December 12, 1983.*]

*Purtle, J., would grant rehearing.

*Barrett, Wheatley, Smith & Deacon,* by: *J. C. Deacon,* for appellant Statewide Health Coordinating Council.

*Gill, Skokos, Simpson, Buford & Owen, P.A.,* by: *Harold H. Simpson, II,* for appellants Baptist Medical System and Arkansas Blue Cross & Blue Shield, Inc.

*House, Jewell, Dillon, Dover & Dixon,* by: *Charles R. Nestrud,* for appellant St. Vincent Infirmary.

*Smith, Jernigan & Smith,* by: *George O. Jernigan* and *Robert D. Smith, III;* and *Harrison & Brown, P.A.,* by: *Robert L. Brown,* for appellee General Hospitals of Humana, Inc.

*George A. Harper,* Special Asst. Atty. Gen., for appellees Arkansas Health Planning & Development Agency, Ivan H. Smith, and Division of Social Services, Department of Human Services.

GEORGE ROSE SMITH, Justice. The principal appellee, General Hospitals of Humana, which we will refer to as Humana, is a subsidiary corporation of a parent company

that owns about 90 hospitals, nearly all of them in the United States. In 1982 Humana applied to the Arkansas Health Planning & Development Agency, which we will refer to as the State Agency, for a certificate of need that would authorize Humana to construct and operate a 150-bed community hospital at Sherwood, in Pulaski County. The application was opposed by the Baptist Medical System, St. Vincent Infirmary, and Arkansas Blue Cross & Blue Shield. After a hearing the director of the State Agency, acting for the Agency, granted the application.

The three protestants asked for a review by an independent agency, as permitted by the State Agency's rules. The Governor appointed the Arkansas Social Services as the independent reviewing agency. A Social Services attorney conducted a hearing and upheld the award of a certificate of need. That decision was affirmed by the circuit court. The protestants present several arguments for reversal, but we need consider only one: The State Agency was not authorized to grant a certificate of need that was inconsistent with the State Health Plan. On the record that argument must be sustained, which disposes of the case.

First, a preliminary procedural matter. Humana has filed a motion to dismiss the appeal as moot, asserting that it was compelled by the State Agency's Rule 16 to enter into a construction contract (and it actually began construction) within one year after the certificate of need was awarded on August 5, 1982, else the certificate would have expired. Without implying that Humana's motion to dismiss is otherwise well taken, we note two flaws in its argument. First, Rule 16 provides that for good cause the State Agency may extend the time up to an additional six months. Humana apparently had good cause to seek an extension, but it did not do so. Second, Rule 16 also states that evidence of an obligation to make the capital expenditure must be received by the State Agency within one year after its approval of the project or the approval will expire. An obligation, under Rule 16, is deemed to have been incurred within the year if the applicant enters into an enforceable contract for the construction, acquisition, lease, or financing of a capital asset. Hence the execution of a construction

contract was not the only choice. Apparently the Humana company fulfilled the financing alternative, as Humana produced testimony on November 9, 1982, that bonds for the project had been issued. We conclude that Humana was not threatened with an immediate expiration of its certificate of need.

Turning to the merits, we must emphasize at the outset that there is in progress a national effort to limit the construction of new hospitals — an effort initiated by Congress, carried forward by regulations issued by the Secretary of Health and Human Services, and supported by legislation enacted by the states, which are expected to participate in the program and receive federal funds for health care. Among the statutes and regulations pertinent to this case are 42 USCA §§ 300k to 300n-6 (1982); 42 C.F.R. §§ 121.1 to 124.607 (1982); and Ark. Stat. Ann. §§ 82-2301 to -2314 (Repl. 1976 and Supp. 1983).

The policy of restricting hospital construction stems from Congress's belief that competition among hospitals, unlike competition in the market place, does not reduce the cost of in-patient hospital services to the consuming public. 42 USCA § 300k-2 (b) (1). To the contrary, the testimony in the case at bar shows that such competition actually increases hospital charges. Fixed hospital costs are so great that an empty bed costs about half as much to maintain as an occupied bed. Hospitals compete not for patients but for doctors, who usually select the patient's hospital. Hospitals vie with one another in acquiring expensive equipment, with unnecessary and costly duplication of facilities. Hospital charges are apt to be paid without question by public and private health insurers. The hard fact is, as one witness stated bluntly: "The cost of hospital care is just outrageous to the consumer."

Congress has attacked the problem by attempting to limit the number of licensed hospital beds. The federal regulation, 42 C.F.R. 121.201 (a), provides: "*Standard.* There should be less than four non-Federal, short-stay hospital beds for each 1,000 persons in a health service area *except under extraordinary circumstances.*" (Our italics.) The

ensuing discussion in subsection (b) then states: "Health Maintenance Organizations and similar groups have shown that high quality health care can be provided with less than 3 beds per 1,000 population. Thus, 4 beds per 1,000 population is a ceiling, not an ideal situation." The Arkansas State Health Plan contains the same less-than-4-beds-per-1,000 limitation that was written into the federal regulations. Ark. State Health Plan, pp. 184-185.

The federàl law, in its endeavor to control the proliferation of hospital beds throughout the nation, contemplates that each state will be divided by its governor, subject to revision by the Secretary, into health service areas so that the distribution of health care units can be conformed to local conditions. Arkansas has been divided into four such areas. This case arose within the Central Arkansas area, composed of Faulkner, Lonoke, Monroe, Prairie, Pulaski, and Saline Counties. This area, like other health service areas, has its own Health Systems Agency and Health Systems Plan. There is also a detailed State Health Plan, which must be and was adopted by the Statewide Health Coordinating Council, must be revised by that Council at least every three years, and is to be administered by the State Agency. 42 USCA § 300m-2 (a) (2); 42 USCA § 300m-3 (c) (2) (A).

Various different figures were given in the testimony about the number of hospital beds in the Central Arkansas area, because the witnesses did not count the beds in the same way. There is no question, however, but that the area, like most of the nation, is overbedded in that its licensed hospital beds already exceed the federal and state maximum of 4 beds per 1,000 persons. Humana did submit figures purporting to show that in 1986 there would be no overage even with its 150 added beds, but when this isolated testimony is weighed along with the other proof it cannot be considered substantial evidence. *See Ark. Savings & Loan Assn. Bd.* v. *Central Ark. S. & L. Assn.*, 260 Ark. 58, 538 S.W.2d 505 (1976). Moreover, both the State Agency and the reviewing independent agency found that Humana's application is inconsistent with the need determinations of the Arkansas Health Systems Plan.

The State Health Plan is not inflexible. Both the federal and state law permit the maximum bed limit to be exceeded locally to meet exceptional conditions, which are specified as being (1) an unusually high proportion of persons over 65 years old, (2) seasonal population fluctuations, (3) rural areas in which, for example, a majority of the residents would otherwise be more than 30 minutes travel time from a hospital, (4) urban areas having a large number of beds compensated by fewer beds in the same metropolitan area, and (5) areas having referral hospitals attracting nonresident patients. 42 C.F.R. 121.201 (a); State Health Plan, pp. 184-185. There has been no finding that any such exceptional condition exists. The independent reviewing agency referred broadly to adjustments for age and rural area, but there is no proof with respect to aged residents in the area, and the area Health Systems Plan states that over 90% of the population in the area lives within 30 minutes of an existing hospital. Specifically, both the Memorial Hospital in North Little Rock and the Rebsamen Hospital in Jacksonville are within the area that Humana expects to serve.

Thus it is established without substantial dispute that Humana's application for a 150-bed hospital in an area already overbedded is contrary to the Central Arkansas Health Systems Plan and to the State Health Plan. On this critical point the State Agency's own Rule 4 (d) requires that the State Health Plan be adhered to:

> Each decision of the State Agency (or the appropriate administrative or judicial review body) to issue a certificate of need must be consistent with the State Health Plan, except in emergency circumstances that pose an immiment threat to public health.

Despite this rule adopted by the State Agency itself, both that agency and the independent agency made what is denominated as a "Finding of Fact," though it contains only what is really a conclusion of law:

> The application, while inconsistent with the need determinations of the Health Systems Plan, is con-

sistent with the goals, objectives, and need determinations of the State Health Plan.

There is no substantial evidence to support that finding. The principal goals and objectives of the entire federal and state program are to reduce the cost of hospital care by prohibiting the construction of new hospitals that would exceed the limit of 4 beds per 1,000 population. The application proposes that the limit be exceeded. It is a contradiction to declare the application consistent with the State Health Plan when in fact it is flatly and unmistakably contrary to that plan.

Counsel for Humana do not and could not seriously argue that the proof supports the State Agency's determination. Instead, it is contended that the federal and state laws are guidelines which the director of the State Agency is free to disregard if he chooses to do so. If that were true, the entire federal and state effort to confine the number of hospital beds to the target limitation would be futile, for every agency director would be free to ignore the limitation whenever he saw fit to do so. The short answer is that the laws and regulations specify the exceptional circumstances under which the fixed bed limit may be exceeded. No such exception has been demonstrated in this instance.

Reversed.

HAYS, J., not participating.