Steve W. GARST and Neema A. Garst, Plaintiffs,

v.

STOCO, INC., d/b/a Mountain View General Hospital; Carl T. Beck; James Zini; Nicholas J. Piediscalzi; Tom Isbell; Carolyn Wilson; Tom Webb; and Josephine Hart, Defendants.

No. LR–C–83–564.

United States District Court, E.D. Arkansas, W.D.

Jan. 9, 1985.

---

Carol S. Arnold, The Rose Firm, Little Rock, Ark., for plaintiffs.

Jim Simpson, Friday, Eldredge & Clark, Roger Glasgow, Wright, Lindsey & Jennings, Little Rock, Ark., David Blair, Batesville, Ark., for defendants.

## PARTIAL SUMMARY JUDGMENT

EISELE, Chief Judge.

## I. INTRODUCTION

Pending before the Court is defendants' motion for partial summary judgment. Plaintiffs in the action are two physicians, Steve Garst and Neema Garst. Defendants are Mountain View General Hospital and various individuals who are either staff members or part owners of the hospital. Plaintiffs allege that defendants have violated the Sherman Act, the Clayton Act, Section 1983, and Arkansas state law. 15 U.S.C. §§ 1, 2, 26; 42 U.S.C. § 1983. Specific allegations relevant to the instant motion are: (1) that defendants conspired to oppose plaintiffs' application for a certificate of need, (2) that defendants conspired to instigate and/or refer to the State Medical Board certain complaints against plaintiffs, and (3) that defendants took certain adverse actions regarding Neema Garst's employment at Mountain View Hospital without affording her due process of law.

Defendant has moved for partial summary judgment, arguing that even if plaintiffs' allegations are true, no recovery can be made. Defendants argue that opposition to plaintiffs' application for a certificate of need may not be subject to antitrust liability. Similarly, defendants argue that referral of complaints to the State Medical Board may not be the basis of antitrust liability. Defendants finally argue that the hospital is a private actor, not a state actor, and thus cannot be liable under section 1983.

■ To prevail on the motion for partial summary judgment, defendants must show that there is no genuine factual issue and that plaintiffs could not prevail under any circumstance. *Portis v. Folk Construc-* *tion Company, Inc.,* 694 F.2d 520 (8th Cir.1982). Motions for summary judgment are particularly disfavored in antitrust actions because motive and intent are so important, and the proof is often in the hands of the defendants. *Poller v. CBS,* 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962); *Hospital Building Co. v. Trustees of Rex Hospital,* 425 U.S. 738, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976); *Fusco v. Xerox Corporation,* 676 F.2d 332 (8th Cir.1982).

## II. FACTS

The facts, which for the purpose of this motion are taken as stated by the plaintiffs, are that plaintiffs were members of the medical staff of Mountain View Hospital. Mountain View Hospital is the only hospital in Stone County, Arkansas. Like most hospitals, Mountain View relies heavily on federal and state funds, and is extensively regulated by the state and federal governments.

In May 1982, plaintiffs decided to build a four-bed "birthing center." Unlike a regular hospital, the birthing center was to be a home-like, family-centered facility. At some point after plaintiffs had decided to build such a facility, Mountain View came up with plans for its own birthing center.

In January 1983, after learning that construction of a birthing facility required a certificate of need, plaintiffs filed an application for a certificate with the Arkansas State Planning Agency. A local advisory body to the state agency, the Delta Hills Health Systems Agency, held a hearing and received public comment concerning the Garsts' application. The Delta Hills Agency then made a recommendation that the certificate not be issued. Later the Arkansas State Planning Agency denied plaintiffs' application for a certificate.

Defendants actively opposed plaintiffs' application before the Delta Hills Agency. Defendants wrote letters, met with members of the Delta Hills Agency, solicited others to write letters, circulated petitions, and solicited attendance at the hearing on the application. During this time period,

defendants are also alleged to have conspired in a successful attempt to revoke plaintiffs' staff privileges at Mountain View Hospital. Defendants are further alleged to have referred and even encouraged past patients of plaintiffs to file complaints concerning plaintiffs with the State Medical Board.

## III. DEFENDANTS' ACTIVITIES BEFORE THE DELTA HILLS HEALTH SYSTEMS AGENCY

■ Defendants' first argument in support of their motion to dismiss is that all opposition to plaintiffs' application before the Delta Hills Health System Agency is protected under the *Noerr-Pennington* doctrine. The *Noerr-Pennington* doctrine protects concerted efforts to procure government action, even where motivated by anti-competitive intent. *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); *United Mine Workers v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965).

### A. *Statutory Background:*

Before the extent of *Noerr-Pennington* protection can be analyzed, an understanding of the health planning process is necessary. The basis for the health planning is the National Health Planning and Resources Development Act of 1974 (the Act or the National Act). 42 U.S.C. § 300k–1, *et seq.* This Act was intended to prevent over-investment in and mal-distribution of health facilities. § 300k. The Act extensively details a process wherein federal, state and local bodies cooperate in planning the resources devoted to health care. States are given strong financial incentives to participate in the process, and almost every state, including Arkansas, has chosen to participate. Ark.Stat.Ann. § 82–2301–2314.

The local bodies set up by the Act, Health Systems Agencies (HSAs), are non-profit, private corporations. § 300*l*–1. Each HSA is responsible for developing what is referred to as a "health systems plan" for its geographical area. § 300*l*–2. A newly created state agency, the State Health Planning and Development Agency (the State Agency) integrates all the local plans into one preliminary State Health Plan. § 300m–2. The preliminary plan is sent to another body, the State Health Coordinating Council (SHHC). The SHHC, whose members are appointed by the Governor, makes a final State Health Plan. The plan must then be approved by the Governor, 300m–3, and by the Secretary of Health and Human Services. Approval by the Secretary will be given only if the plan conforms to the National Act and to federal regulations promulgated thereunder. § 300m–1.

The State Health Plan in turn largely determines whether a person will be granted a certificate of need. In order to build or expand a hospital, a person must request and receive from the State Agency a certificate of need. The HSA first considers an application for a certificate and makes a recommendation to the State Agency for approval or nonapproval. Ark. Stat.Ann. § 82–2311. The State Agency then itself reviews the application and approves or disapproves it. If the State Agency's decision is contrary to the HSA's recommendation, the HSA has standing to appeal the State Agency's decision. Of course, the applicant denied a certificate also has standing to appeal an adverse decision. In Arkansas, the State Agency's discretion concerning the certificates is rather limited because the decision to grant a certificate must be consistent with the State Health Plan. *Statewide Health Coordinating Council v. General Hospitals of Humana, Inc.*, 280 Ark. 443, 660 S.W.2d 906 (1983).

### B. *Noerr-Pennington:*

■ When examining the applicability of *Noerr-Pennington* to proceedings before an HSA, it should first be noted that the doctrine protects only actions taken to procure *government* action. In the instant case, it is not clear that an HSA should, for the purposes of affording *Noerr-Penning-*

*ton* protection, be treated as a government body. The Supreme Court has previously characterized HSAs as private planning bodies, not government bodies. *National Gerimedical Hospital and Gerontology Center v. Blue Cross of Kansas City,* 452 U.S. 378, 101 S.Ct. 2415, 69 L.Ed.2d 89 (1981). In *National Gerimedical,* a hospital was built without having obtained a favorable recommendation from the local HSA. At the time, no state planning agency existed in Missouri, and hospitals were not required to have certificates of need for construction. HSAs did exist, however, and would make recommendations concerning new construction.

Because the hospital construction had not been recommended by the HSA, Blue Cross of Kansas City refused to do business with the hospital. The hospital then brought an antitrust action against Blue Cross. Blue Cross defended on the grounds that the National Act had impliedly repealed the antitrust laws with respect to the implementation of HSA plans. The Supreme Court rejected that defense, holding that, at least with respect to the conduct at issue, no direct conflict existed between the National Act and the antitrust laws, and thus the antitrust laws remained applicable to the conduct complained of. The Court also held that HSAs were only private advisory boards, and those who cooperated with them were not entitled to antitrust immunity. *Id.* at 390, 101 S.Ct. at 2422.

Because the instant case arises in an entirely different context, this Court does not believe the Supreme Court's characterization of HSAs is necessarily applicable. In *National Gerimedical,* the Supreme Court emphasized that its holding should not automatically be applied in other factual situations. *Id.* at 393, n. 18, 101 S.Ct. at 2424, n. 18. And, indeed, when the Fourth Circuit was later presented with a claim for antitrust immunity in a factually dissimilar situation concerning certificates of need, it did not follow *National Gerimedical.* *Hospital Building Company v. Trustees of Rex Hospital,* 691 F.2d 678 (4th Cir. 1982).

In *Rex Hospital,* the Fourth Circuit determined that participants in the health planning process were entitled to some antitrust immunity, although such immunity was not absolute. There, a plaintiff hospital which had sought a certificate of need brought an action for Sherman Act violations against the trustees of another hospital. The evidence presented indicated "that the defendants had dominated the HSA and subverted it to their own purposes," and the jury found that the Sherman Act had been violated. *Id.* at 683. The defendants sought reversal, arguing that the district court applied an incorrect per se rule of antitrust liability and that their opposition to plaintiff's application for a certificate of need was protected under *Noerr-Pennington.*

The Fourth Circuit reversed and remanded, holding that a per se rule was not appropriate. The court stated that while the provisions of the National Act "do not mandate participation by local hospitals or their administrators, participation by private health care providers is clearly anticipated and we think desirable." *Id.* at 685. Thus, the court found that

> We think a very narrow "rule of reason" is required in order to permit defendants to show, if they can, that participation in certain planning activities that would otherwise violate § 1 might not under the circumstances have been an unreasonable restraint on trade. The appropriate rule, we find, is simply that planning activities of private health services providers are not "unreasonable" restraints under § 1 if undertaken in good faith and if their actual and intended effects lay within those envisioned by specific federal legislation in place at the time of the challenged activities as desirable consequences of such planning activities. *See, Silver v. New York Stock Exchange,* 373 U.S. 341, 360–61, 83 S.Ct. 1246, 1258–1259, 10 L.Ed.2d 389 (1963).... Specifically we hold that "planning" under this special rule of reason is not "reasonable" if its purpose or

effect is only to protect existing health care providers from the competitive threat of potential entrants into or expanders within the same "market."

Regarding appellants' claim that their activities were protected by *Noerr-Pennington,* the Court stated:

Actions taken to discourage and ultimately prevent competitors from meaningful access to the processes of administrative agencies fall within the sham exception to *Noerr-Pennington* immunity. *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 512–513, 92 S.Ct. 609, 612–613, 30 L.Ed.2d 642 (1972). Thus, proof that appellants conspired to bring the chairman of the Central Planning Council and an assistant attorney general into their conspiracy, with the intent to foreclose HBC from meaningful access to the Central Planning Council and the MCC, is within the sham exception to *Noerr-Pennington. Id.* at 687.

The Fourth Circuit does not make explicit to whom and to which activity it is applying its good faith requirement. The fact that the court treated the rule of reason and *Noerr-Pennington* in separate discussions would indicate that the court did not intend the good faith requirement to apply to private parties' efforts before the HSA. Further, its holding that defendant's activities before the HSA fell within the sham exception to *Noerr-Pennington* assumes that, absent an exception, *Noerr-Pennington* would protect such activities.

Plaintiffs in the instant case, however, believe that the Fourth Circuit intended that its good faith requirement be read as part of the sham exception. Plaintiffs argue that, unless a party's opposition to a certificate of need is in good faith, plaintiffs' activities before the HSA fall within the sham exception. Because in *Rex Hospital,* the primary allegation concerned the defendant's conduct before the HSA, and because, absent a contrary indication, a court normally addresses its holding to the primary allegation, plaintiffs' belief that the Fourth Circuit intended its good faith

standard to apply to such conduct is not illogical.

Some policy considerations also would support the application of a stricter standard with respect to conduct before the HSA. Rhodes, *Antitrust and Health Planning,* 7 J.Corp.L. 311 (1982). An HSA may not be as well-insulated from improper influences as are most government bodies. It is a localized body and a large portion of its membership is health care providers. Such providers may have vested interest in the outcome, or may be too susceptible to pressure from their business peers. Further, there may be less need for *Noerr-Pennington* protection in the HSA context. The HSA is already a localized body with a mixture of health care providers and consumers. Input from others, presumably similarly situated, may be unnecessary. Finally, those other persons who do wish input always have the right to petition the ultimate decision maker, the State Agency.

On the other hand, some characteristics of the HSA work to make a dilution of *Noerr-Pennington* protection both unnecessary and/or inappropriate. Miller, *Antitrust and Certificate of Need: Health Systems Agencies, the Planning Act, and Regulatory Capture,* 68 Geo.L.J. 873 (1981). Most important is the fact that HSAs have limited authority in that they only make recommendations concerning certificates of need; the State Agency makes the ultimate decision. The State Agency should be able to evaluate the merits of the certificate of need application, the HSA's recommendation, and the influences on the HSA. Further, the fact that a majority of HSA members are health care consumers renders it less likely that HSAs will be improperly influenced.

█ It must also be noted that the *Noerr-Pennington* doctrine itself encompasses safeguards from abuse. Where a party, through improper means, denies an individual meaningful access to a government body, the party's actions will not be protected under the so-called "sham exception." *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 92 S.Ct.

609, 30 L.Ed.2d 642 (1972). Another exception, the "co-conspirator" exception, provides that where a party conspires with a member of the governmental agency, the party will not be protected by *Noerr-Pennington* immunity. *Id.; Duke & Co. Inc., v. Foerster,* 521 F.2d 1277 (3rd Cir.1975). In reality a finding of co-conspiracy indicates that a party was denied meaningful access to the government body, and would support the application of the sham exception. Accordingly, some courts prefer to treat co-conspiracy as part of the sham exception rather than as a separate exception. *Rex Hospital, supra. See also Westborough Mall v. City of Cape Girardeau,* 693 F.2d 733 (8th Cir.1982), *cert. denied,* 461 U.S. 945, 103 S.Ct. 2122, 77 L.Ed.2d 1303.

■ Although the Court is aware that the co-conspirator exception has been criticized by the Eighth Circuit, *Westborough Mall v. City of Cape Girardeau, supra; First American Title Company of South Dakota v. South Dakota Land Title Association,* 714 F.2d 1439 (1983), it appears that such criticism is directed at the automatic and blind application of the doctrine and not at the underlying rationale for the exception. The Court believes that where a party is thereby denied meaningful access to a body, a finding of co-conspiracy could be reason not to apply *Noerr-Pennington.* The Court further believes that, for the policy reasons described above, the HSA and certificate of need process may represent a situation particularly appropriate for application of the co-conspirator exception. *See* Rhodes, *Antitrust and Health Planning, supra;* Miller, *Antitrust and Certificate of Need, supra.*

■ In arguing for and against *Noerr-Pennington* protection, both parties to this action have implicitly assumed that the HSA is a government body with respect to its recommendations concerning certificates of need. The Fourth Circuit and commentators have, explicitly or implicitly,

made the same assumption. *Rex Hospital, supra;* Miller, *supra;* Rhodes, *supra.* The Court believes the assumption correct, and so finds.[1] The only question is whether, because of its unusual nature, it is the type of government body which should be afforded complete *Noerr-Pennington* protection. This Court holds that it should. No existing rule of law would support a limitation of *Noerr-Pennington,* and the Court declines to fashion such a limitation on its own initiative. Sufficient protection from abuse already exists through the exceptions to *Noerr-Pennington* and through the safeguards in the certificate of need process.

■ Once it is determined that *Noerr-Pennington* protection does apply, it is clear that plaintiffs could not prevail on their claim concerning defendants' activities before the Delta Hills Agency. Plaintiffs' claim is simply that defendants opposed plaintiffs' application before the Delta Hills Agency and that their opposition was motivated solely by anticompetitive intent. *Noerr-Pennington* protects such opposition from antitrust liability. Plaintiffs have made no allegations which could support an exception to *Noerr-Pennington;* defendants have not been accused of fraudulent conduct or of conspiracy with HSA members. Thus, with respect to plaintiffs' claim concerning defendants' activities before the Delta Hills Agency, defendants' motion for partial summary judgment will be granted.

## IV. DEFENDANTS' ACTIVITIES BEFORE THE STATE MEDICAL BOARD

Defendants' second argument in support of their motion for partial summary judgment is directed at plaintiffs' allegation that some of the defendants conspired to influence former patients of plaintiffs to file complaints with the State Medical Board. Defendants argue that the State

1. The Court notes that it has not made any ruling on the extent to which HSAs, themselves, are entitled to antitrust immunity; its ruling is directed at the petitions of private parties before the HSA.

Medical Board is a state agency, and thus *Noerr-Pennington* protects any communications to the Board. Plaintiffs correctly concede that the Board is here functioning as a state agency, but claim that defendants' activity falls within the sham exception to *Noerr-Pennington*. Plaintiffs here, as in the discussion above, understand, under *Rex Hospital, supra,* the sham exception to include actions taken for the sole purpose of destroying competition. This Court, however, does not so understand the sham exception.

■■■ The sham exception is intended to protect meaningful access to government bodies; it is directed at essentially fraudulent actions. *California Motors, supra.* If plaintiffs alleged that defendants manufactured false complaints before the State Medical Board, which had no factual basis, then *Noerr-Pennington* protection would probably be inappropriate. Here, however, no allegations have been made that those individuals who complained to the State Medical Board did not have legitimate bases for their complaints. The allegation is only that defendants, motivated solely by anti-competitive intent, referred and even encouraged individuals to file their complaints with the State Medical Board. The Court finds such conduct to be protected by *Noerr-Pennington.*

Therefore, with respect to those claims arising out of defendants' actions before the State Medical Board, defendants' motion for partial summary judgment will be granted.

## V. STATE ACTION FOR SECTION 1983

■■■ Defendants' final argument is that plaintiff Neema Garst's section 1983 claim must be dismissed because the actions complained of, refusal to restore staff privileges and the issuance of a formal reprimand, were not actions of the state. Mountain View Hospital is a private hospital, although it receives federal and state funds and is regulated by federal and state law.

It is the regulation by the state which, according to plaintiffs, makes the actions at issue state action. Specifically, the Ar-

kansas Department of Health Regulations, promulgated pursuant to Ark.Stat.Ann. § 82–329, requires hospitals to adopt written bylaws setting out the method of appointing the medical staff, the requirements for medical staff membership, and an appeal process for physicians to follow in challenging adverse recommendations. *Arkansas Department of Health Rules and Regulations for Hospitals and Related Institutions* (1979), § I–II. Mountain View Hospital does have such bylaws which include provisions for disciplinary procedures and appeals from adverse decisions.

Plaintiffs believe these bylaws were mandated by the state, and therefore the state specifically regulates and controls disciplinary actions and revocation of privileges. Mountain View Hospital's actions in this regard, according to plaintiffs, can thus be seen as state action.

The Supreme Court has identified three factors to be considered in determining whether particular conduct constitutes "state action." *Blum v. Yaretsky,* 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982). First, there must be a " 'sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may fairly be treated as that of the State itself.' (citations omitted) ... The purpose of this requirement is to assure that constitutional standards are invoked only when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains." *Id.* 102 S.Ct. at 2786.

Second, the nexus must be such that the state "has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the state. (citations omitted) Mere approval of or acquiescence in the initiatives of a private party is not sufficient to justify holding the State responsible for those initiatives under the terms of the Fourteenth Amendment." (citations omitted) *Id.*

And finally, the required nexus "may be present if the private entity has exercised powers that are 'traditionally the exclusive prerogative of the State.'" *Id.*

The Court believes it is clear that, under the analysis set out by the Supreme Court, the actions complained of by the plaintiffs in the instant case cannot be considered state action. *See also, Briscoe v. Bock, et al.,* 540 F.2d 392 (8th Cir.1976); *Lubin v. Crittenden Hospital Association,* 713 F.2d 414 (8th Cir.1983). The state's only involvement is a general requirement that a hospital have some form of bylaws. The state does not approve the bylaws adopted by a hospital, nor does the state monitor any actions taken by a hospital pursuant to its bylaws. Actions taken pursuant to such bylaws cannot then be fairly said to be that of the state. Therefore, plaintiff cannot prevail on a section 1983 claim. Defendants' motion for partial summary judgment with respect to the section 1983 claim will also be granted.

## VI. CONCLUSION

It is therefore Ordered that defendants' motion for partial summary judgment be, and it is hereby, granted.