WASHINGTON REGIONAL MEDICAL CENTER and
Its Board of Governors *v.* MEDICAL CARE
INTERNATIONAL, INC., d/b/a SURGICARE
CORPORATION, et al.

85-305                                                            711 S.W.2d 457

Supreme Court of Arkansas
Opinion delivered June 9, 1986

*Gill, Skokos, Simpson, Buford & Graham, P.A.*, by: *Harold H. Simpson, II*, and *John W. Fink*; and *Burke & Eldridge*, by: *Thomas B. Burke*, for appellant.

*Steve Clark*, Att'y Gen., by: *George A. Harper*, Spec. Asst. Att'y Gen., for appellee Arkansas Dept. of Human Services and Arkansas Health Planning and Development Agency.

*Hilburn, Bethune, Calhoon, Forster, Harper & Pruniski, Ltd.*, by: *Sam Hilburn* and *Dorcy Kyle Corbin*, for appellee Medical Care Int'l, Inc., d/b/a Surgicare Corp.

GEORGE ROSE SMITH, Justice. For the past few years there has been in progress a national effort to limit the construction of new hospitals. The movement was initiated by Congress and has been supported by legislation enacted in Arkansas and in other states, all of which participate in the program and receive federal funds for health care. In the present case we need not review the statutes, which we considered in some detail in an earlier case. *Statewide Health Coordinating Council* v. *General Hospitals of Humana*, 280 Ark. 443, 660 S.W.2d 906 (1983), cert. denied, 104 S.Ct. 2386 (1984).

The case at bar began in 1983 when the appellee, Surgicare Corporation, applied to the West Arkansas Health Planning and Development Agency for a Certificate of Need to construct an outpatient surgical center in Fayetteville. Surgicare's proposed center is to consist of three operating rooms and such recovery rooms and allied facilities as would be necessary for outpatient surgery, which means surgery that does not require the patient to spend the night at a hospital. Outpatient surgery is also referred to as ambulatory or one-day surgery.

Surgicare's application for authority to build the proposed outpatient center was opposed by the appellant, Washington Regional Medical Center, which operates a hospital in Fayetteville. That hospital has several operating rooms, in all of which both inpatient and outpatient surgery is performed. None of Washington Regional's operating rooms is dedicated solely to outpatient surgery. Consequently scheduling problems may arise, with an outpatient being "bumped" to make way for emergency surgery. Most outpatient surgery is elective and not life threatening.

Washington Regional opposed Surgicare's application on the ground that under the governing law and regulations there are already a sufficient number of operating rooms in the service area,

consisting of Washington and Benton counties. Washington Regional submitted proof, which is not disputed, of the total number of operations performed during the base year in its operating rooms and of the number of those operations that it classifies as outpatient surgery. On that basis a certain percentage of Washington Regional's operating rooms is said to be used for outpatient surgery.

Surgicare's application was disapproved by the West Arkansas Health Systems Agency, the lowest administrative level. On appeal, however, the Arkansas Health Planning and Development Agency, after a public hearing, granted the application. That action was upheld by an independent reviewing agency selected by the Governor and was affirmed on appeal to the circuit court of Washington county. Washington Regional's appeal comes to this court under Rule 29(1)(c).

Washington Regional's principal argument, presenting an issue of law, is that the administrative agency misinterpreted its own regulations in determining the existing number of "outpatient surgery operating rooms." The agency held that the only existing operating rooms to be counted are those dedicated solely to outpatient surgery. There being no such operating rooms in the area, the three operating rooms in Surgicare's proposed center will not exceed the total that is permissible for the area. Washington Regional argues that a fractional part of its multipurpose operating rooms should be counted, which would result in the new center's exceeding the permissible limit.

The controlling question is simply whether the agency's interpretation of its regulations is a reasonable one, bearing in mind that the courts concededly attach much weight to an administrative agency's interpretation of its own regulations.

The governing regulations were adopted in 1980 by the State Health Planning and Development Agency, in consultation with the Statewide Health Coordinating Council. We quote the pertinent regulations in full, down to the mathematical computation by which the basic determination is made, there being no dispute about those figures.

## CRITERIA AND STANDARDS FOR
## OUTPATIENT SURGERY CENTERS

1. Proposed Criteria and Standards for estimating a community's need and requirements for outpatient surgery centers.

2. Proposed Criteria and Standards for reviewing proposals for changes in outpatient surgery centers.

DEFINITION:
Outpatient surgery is defined as the provision of surgical services, other than minor dental surgery, which requires the use of general or intravenous anesthetics or a period of postoperative observation, or both, and where in the opinion of the attending physician, hospitalization is not necessary.

An OUTPATIENT SURGICAL CENTER (OSC) is any facility, or part of a facility, dedicated solely to the provision of outpatient surgical services. An OSC may be either freestanding, that is, independently-operated, or hospital-operated.
A FREESTANDING, INDEPENDENTLY-OPERATED OUTPATIENT SURGICAL CENTER (FREESTANDING) is one which is physically and organizationally separated from a hospital.
A HOSPITAL-OPERATED OUTPATIENT SURGICAL CENTER is one which is organizationally controlled by a hospital. Two general types of hospital-operated OSC's are as follows:
1) HOSPITAL-OPERATED SATELLITE (SATELLITE) which is separate from the inpatient program and contained in a satellite facility located some distance from the hospital, and
2) HOSPITAL-OPERATED (HOSPITAL) which is located on hospital grounds. This type need not be physically remote from other operating rooms, but to be constructed as an outpatient surgery center it must be dedicated solely to ambulatory surgery and the facility or institution should have an organized program for the provision of outpatient surgery service in that (those) unit(s).

1. Planning

A. Determination of Need

In keeping with the requirements of P.L. 93-641, as amended by P.L. 96-79, Section 1523 (a) (1) (B) the State Agency, in consultation with the Statewide Health Coordinating Council, has determined that there is a statewide need for dedicated outpatient surgery facilities in locations throughout the State where there are sufficient number of surgical procedures to justify the existence of one or more dedicated outpatient surgery units.

Next there is a detailed methodology for an 8-step computation by which the need for outpatient surgery centers is to be determined. We emphasize that the purpose of the calculation is to determine the need for outpatient surgical centers, not for multipurpose operating rooms such as those at Washington Regional's hospital. The computation is to begin with the best obtainable information as to the population of the service area and the total number of all surgical operations performed in the selected base year. Except for those two basic facts all the computations amount to theoretical predictions for the future. The percentage of total operations that could be on an ambulatory basis is supplied by the regulations and increases by one percent a year from 1980 through 1990. The first seven steps in the computation accomplish a determination of the "estimated number of outpatient surgery operating rooms needed." There follows the eighth step, upon which the present appeal centers:

8. The number of outpatient surgery operating rooms existing is subtracted from the number shown as needed in any given year to arrive at the number of additional units needed.

When the computation is completed through step seven as to the service area now in question, the estimated number of outpatient surgery operating rooms needed is approximately four. The parties differ as to the precise figure, but the variance is immaterial. Surgicare insists that no outpatient surgery operating rooms now exist in the area; so the need exceeds the three it seeks to construct. Washington Regional argues that its proportionate use of its multipurpose operating rooms must be deter-

mined and subtracted, leaving a remainder of less than three. Washington Regional cites a recognized study of the problem, which is listed in the bibliography at the end of the regulations. That study cautions that ignoring such multipurpose facilities may inappropriately falsify the estimate of available resources. The regulations, however, do not include that factor in the computation of need.

■ Upon the principal question at issue we are firmly of the opinion that the agency's construction of the regulations is the only reasonable interpretation. We regard Washington Regional's argument as being without merit.

The national program for limiting the construction of hospitals had been in force for some years before lawmakers turned to outpatient surgery as a means of promoting competition and presumably reducing the overall cost of surgical operations. The regulations now in question have nothing to do with the need for multipurpose operating rooms. The regulations mention *outpatient surgical centers* again and again; their thrust is directed solely toward determining the need for centers of that nature, and in later sections of the regulations not pertinent here, toward making it certain that the centers will be adequately financed and properly operated. The appellant's entire approach, that the hospital is adequately providing outpatient surgical facilities, is outside the perimeters of the real problem.

We should mention that existing hospitals are apparently free to create their own outpatient surgical centers within their own buildings. The last of the definitions at the beginning of the Criteria and Standards defines a hospital-operated outpatient surgical center as one that need not be physically remote from other operating rooms but which must be dedicated solely to ambulatory surgery. The regulations were adopted in 1980; so Washington Regional during the ensuing three years before Surgicare filed its application might have taken steps to create its own outpatient surgical center. It did not see fit to do so.

The appellant also complains that the record does not contain a transcript of two public hearings that were held in the course of the administrative proceedings. An agency rule requires that the agency "maintain" a verbatim record of the hearing. The hearings were recorded on tape, but the tapes have not been

transcribed. The independent reviewing agency decided that the record, without the transcriptions, contained sufficient information for the issue to be determined. The appellant asks that the case be remanded for the inclusion in the record of a transcription.

There is no real merit in the appellant's contention. The tapes were maintained, but the appellant does not appear either to have requested their transcription or to have tried to obtain the tapes themselves. No question of fact is presented by the appeal. There has been not even a suggestion that a transcription would provide anything material to the issue presented. This application has already been in progress for three years. We see no reason to delay it further by a useless remand.

Affirmed.