The Honorable Bob Mathis State Representative 106 Leigh Circle Hot Springs, Arkansas 71901-7760
Dear Representative Mathis:
I am writing in response to your request for an opinion concerning the Fayetteville Veterans' Home. Specifically, you have enclosed a separate document discussing certain law and policy relating to "certificates of need" in the nursing home industry. The document states the following and includes two questions on which you seek my opinion:
 The Health Services Agency and the Health Services Commission maintain that the permit of approval process for nursing facility construction or expansion is necessary and based on the State's interest in controlling health-care costs. Arkansas Health Servs. Agency v. Desiderata, Inc., 331 Ark. 144, 154, 958 S.W.2d 7 (1998). They also maintain that the overbuilding of facilities can be responsible for high costs of medical services. Id. The policy restricting construction is not just local, but rather derives from Congress's belief that competition among health care providers, unlike competition in the market place, does not reduce the cost of medical services to the consuming public. Statewide v. General Hospitals of Humana, 280 Ark. 442, 600 S.W.2d 906 [sic 280 Ark. 443, 660 S.W.2d 906] (1983), citing 42 U.S.C. §§ 300k to 300n-6 (1982); 42 C.F.R. §§ 121.1 to 124.607 (1982).
 The legislation governing the conversion of the Little Rock Veterans' Home evidences the intent to limit expenditures of state and federal funds. While the General Assembly, in 1985, declared that the Little Rock Veterans' Home was not required to obtain a Certificate of Need (aka" Permit of Approval") for converting the Home to a nursing facility and domiciliary for veterans, (Acts 432, 578, 175 of 1985) [sic Act 157 of 1987], the statute establishing the Little Rock Veterans' Home limits the number of beds to 70 and prohibits Medicaid funding of services in that facility. Ark. Code Ann. § 20-81-105(b)(2)(A)- (B)[sic (d)(2)(A) and (B)].
 (1) In light of this history and legislative intent, does Section 3 of Act 166 of 2003, "Disbursement Controls," pertaining to the Fayetteville Veterans' Home, prohibit the Fayetteville Veterans' Home from contracting as a Medicaid provider with the Department of Human Services, Division of Medical Service when it states: "(A) No contract may be awarded nor obligations otherwise incurred in relation to the project or projects described herein in excess of the State Treasury funds actually available therefore as provided by law?"
 (2) In Attorney General Opinion 2003-292, the General interpreted Act 166 of 2003, to bypass, or exempt, the usual permit of approval requirement for construction of nursing facilities. In doing so, the Opinion adopts the express POA exemption language in the statute establishing the Little Rock Veterans' Home. Do the other provisions of the statute governing the operations of the Little Rock Veterans' Home apply equally to the operations of the Fayetteville Veterans' Home? See Ark. Code Ann. § 20-81-105(b)- (f). More specifically, do the statutory requirements that the home not exceed 70 beds and contain no Medicaid beds apply to both homes?
RESPONSE
It is my opinion that the answer to each of your questions is "no." I recently addressed related questions in Op. Att'y. Gen. 2005-137, a copy of which I have enclosed for your review. In that Opinion I opined that a court might well conclude that the receipt of Medicaid reimbursement by the Fayetteville Veterans' Home would not run afoul of Section 9 of Act 2272 of 2005. You pose two different questions from those posed in Opinion 2005-137, which I will address below.
Question 1 — In light of this history and legislative intent, doesSection 3 of Act 166 of 2003, "Disbursement Controls," pertaining to theFayetteville Veterans' Home, prohibit the Fayetteville Veterans' Homefrom contracting as a Medicaid provider with the Department of HumanServices, Division of Medical Service when it states: "(A) No contractmay be awarded nor obligations otherwise incurred in relation to theproject or projects described herein in excess of the State Treasury fundsactually available therefore as provided by law?
In my opinion, in response to your first question, Section 3 of Act 166 of 2003 does not prohibit the Fayetteville Veterans' Home from becoming a Medicaid provider. The pertinent Sections of Act 166 are Sections 1, 2 and 3. Section 1 appropriates $2,400,000 from the "General Improvement Fund" for construction of the Fayetteville Veterans' Home. Section 2 appropriates $4,500,000 from federal funds for construction of the Fayetteville Veterans' Home. Section 3 is entitled "Disbursement Controls." It provides as follows:
 DISBURSEMENT CONTROLS. (A) No contract may be awarded nor obligations otherwise incurred in relation to the project or projects described herein in excess of the State Treasury funds actually available therefor as provided by law. Provided, however, that institutions and agencies listed herein shall have the authority to accept and use grants and donations including Federal funds, and to use its unobligated cash income or funds, or both available to it, for the purpose of supplementing the State Treasury funds for financing the entire costs of the project or projects enumerated herein. Provided further, that the appropriations and funds otherwise provided by the General Assembly for Maintenance and General Operations of the agency or institutions receiving appropriation herein shall not be used for any of the purposes as appropriated in this act.
As an initial matter, in my opinion Section 3 of Act 166 of 2003 does not prohibit the action you suggest because Act 166 is not the applicable appropriation act. See, Arkansas Constitution art. 5, § 29 (stating that no appropriations shall be for a longer period than two years). The current act is Act 143 of 2005. See also, previously, Acts 43 and 50 of 2003 (1st Ex. Sess.). It contains a Section 3, however, that is a verbatim recitation of Section 3 of Act 166 of 2003.
It is my opinion that this section does not prohibit the Fayetteville Veterans' Home from becoming a Medicaid provider because both Act 166 and Act 143 are appropriation acts for construction of the Veterans' Home and not for its operation. As a consequence, each Section 3 acts as a restriction against contracts entered into to complete construction of the home. It is my understanding that the receipt of any Medicaid revenues would be to further operation, rather than construction, of the Fayetteville Veterans' Home.[1]
Finally, the intention of the language you recite prohibiting the "award" of contracts" or the "incur[ing] of obligations" in excess of funds actually available, is to prohibit deficit spending. That is, an agency authorized to construct a project is not permitted to incur obligations or contracts without being assured of the necessary funds to pay for the contracts. This prohibition does not appear to apply in the context of a contract for Medicaid reimbursement, where the agency in question will not be incurring an unsupported financial obligation through the contract, but will, instead, be obtaining a financial benefit through the reimbursement.
It is therefore my opinion that the answer to your first question is "no."
Question 2 — In Attorney General Opinion 2003-292, the Generalinterpreted Act 166 of 2003, to bypass, or exempt, the usual permit ofapproval requirement for construction of nursing facilities. In doing so,the Opinion adopts the express POA exemption language in the statuteestablishing the Little Rock Veterans' Home. Do the other provisions ofthe statute governing the operations of the Little Rock Veterans' Homeapply equally to the operations of the Fayetteville Veterans' Home? SeeArk. Code Ann. § 20-81-105(b)- (f). More specifically, do the statutoryrequirements that the home not exceed 70 beds and contain no Medicaidbeds apply to both homes?
It is my opinion that the answer to this question is also "no."
As an initial matter, contrary to your suggestion above, I must disagree that Op. Att'y. Gen. 2003-292 "adopts the express POA exemption language in the statute establishing the Little Rock Veterans' Home." In concluding in Opinion 2003-292 that Act 166 of 2003 did not require a certificate of need for the Fayetteville Veterans Home, I relied upon the fact that the legislature, in crafting legislation for the Little Rock Veterans Home, expressed its intention that it had always intended, through the passage of earlier acts, that no certificate of need be required for that home, even though the original legislation was silent on the question. The General Assembly only amended the relevant statutes to expressly exempt the Little Rock Veterans' Home from such requirement to make certain its original intent. See Acts 157 of 1987, §§ 1 and 4 (stating respectively that "[t]he General Assembly intended, through Act 432 of 1985, Act 578 of 1985 and Act 175 of 1985, to provide for the conversion of the Arkansas Veterans' Home to a nursing home without the necessity of obtaining a certificate of need" and "the Arkansas Veterans' Home should already have been converted to a nursing facility; that legislation was enacted in 1985 to accomplish the same but has not been properly interpreted . . ."). I relied upon this legislative history and statement of original legislative intention to bolster my conclusion that a certificate of need was not required of the Fayetteville Veterans' Home even though the legislation concerning the Fayetteville Veterans' Home was silent on the question.
There is no similar evidence that the General Assembly always intended, in the passage of the original laws governing the Little Rock Veterans' Home and without expressly so stating, that the Little Rock Veterans' Home not have any beds designated for Medicaid reimbursement. In my opinion, therefore, neither A.C.A. § 20-81-105, nor anything in its legislative history suggest that the General Assembly intended that where, as here, the applicable legislature is silent on the question, that no beds be designated for Medicaid reimbursement. Rather, as I concluded in Op. Att'y. Gen. 2005-137 "this express prohibition with regard to the Little Rock Veteran's Home lends support to the conclusion that no similar prohibition was intended for the Fayetteville Veterans' Home. If the legislature had intended any such prohibition, it would have been easy to state as much, as with A.C.A. § 20-81-105(d)(2)(B)."
In my opinion, therefore, the answer to your second question is "no."
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:ECW/cyh
[1] In any event, even if this provision of Section 3 of Act 166 of 2003 or Act 143 of 2005 were pertinent to the operation of the Veterans' Home, the second sentence of Section 3 above might in that event support the receipt of Medicaid reimbursement. The second sentence above states that: "[p]rovided, however, that institutions and agencies listed hereinshall have the authority to accept and use grants and donations including Federal funds, and to use its unobligated cash income or funds, or both available to it, for the purpose of supplementing the State Treasury funds for financing the entire costs of the project or projects enumerated herein." (Emphasis added). Medicaid reimbursements are denominated in the Department of Human Services appropriation act as "grant payments." See Acts 2273 of 2005, § 4.