Donald RIGGIN and Norma D. Riggin *v.* Donald H. and
Eunice M. DIERDORFF, Husband and Wife; Savers
Federal Savings and Loan Association; and the Internal
Revenue Service

90-38                                                    790 S.W.2d 897

Supreme Court of Arkansas
Opinion delivered June 25, 1990

518

*Donald Riggin* and *Norma Riggin*, for appellants.

*B. Frank Mackey, Jr., P.A.*, by: *Rosanna Henry*, for appellee Savers Federal Savings and Loan Association.

Tom Glaze, Justice. Appellees, Donald and Eunice Dierdorff, owned a lot in Fairfield Bay and appellee, Savers Federal Savings and Loan Association (Savers), held a promissory note and mortgage under which the Dierdorffs made payments for the land. Later, on October 17, 1982, the Dierdorffs sold the lot to the appellants, Donald and Norma Riggin, for $67,000.00. Under the parties' sale contract, the Riggins agreed to pay the Dierdorffs a $20,000.00 down payment plus $7,700.00 at 10% interest over a five-year period. They further agreed to pay the balance amount of $39,300.00 due Savers on a note and mortgage by assuming monthly installments of $348.00.

The Riggins discharged their $27,700.00 obligation to the Dierdorffs apparently sometime in 1987, but later defaulted in their payments to Savers in May of 1988. After learning of the Riggins' default, the Dierdorffs assumed payments to Savers for a seven-month period, but in August 1989, they filed suit in equity against the Riggins to nullify the parties' contract and to quiet and confirm title in the Dierdorffs.[1] Donald Riggin did not answer the suit, but Norma filed a motion to dismiss and an answer. The Dierdorffs then amended their complaint to bring Savers into the

---

[1] The Internal Revenue Service was also made a party defendant because of a tax lien against Donald Riggin, but we make no further reference to the IRS since none of the issues raised affects its lien.

suit and plead for the alternative relief of foreclosure. Savers entered the suit also seeking foreclosure, and after various counterclaims, cross-claims and answers were filed, the chancellor entered a foreclosure decree granting relief to Savers and the Dierdorffs. Appearing pro se, both Riggins appeal raising seven points for reversal, but we conclude none have merit. Therefore, we affirm.

In her first argument, Norma Riggin claims the chancery court had no jurisdiction because the Dierdorffs' action was nothing more than a request by them to recover possession of their land or to establish legal title to it. *See Cole* v. *Mette*, 65 Ark. 503 (1898). Her contention simply is incorrect. Unlike in *Cole*, this case does not involve an ejectment action or adverse possession claim. In addition, both the Dierdorffs and Savers commenced their actions requesting equitable relief, which was not the situation in *Cole*. Here the Riggins contracted to purchase the disputed property subject to a note and mortgage held by Savers, and they breached their agreement by defaulting on their payments to Savers. The Dierdorffs sued to rescind the parties' contract, to quiet title in themselves or, alternatively, to have the court enter a foreclosure decree. Savers joined in the request for foreclosure, which the chancellor properly granted.

We have stated that foreclosure proceedings are equitable proceedings. *Colclasure* v. *Kansas City Life Ins. Co.*, 290 Ark. 585, 720 S.W.2d 916 (1986). Here, the chancery court properly acquired jurisdiction of the parties' claims and in applying the clean-up doctrine, it could, and did, decide law issues incidental or essential to the determinations of the equitable issues. *Id.* The *Colclasure* decision also answers Ms. Riggin's second argument that she is entitled to a jury trial and the chancellor erred in denying her one. In *Colclasure*, we further held that the constitutional right to a jury trial did not extend to a foreclosure proceeding or equity case.

Ms. Riggin also argues the chancellor erred in denying her motion for summary judgment and in granting the foreclosure decree. Both arguments are largely based upon the fact that the Dierdorffs, after receiving their $27,700.00 from the Riggins, had furnished the Riggins with a warranty deed to the disputed property and a statement that the contract had been paid in full.

Nonetheless, the parties' contract still required the Riggins to pay Savers on the note and mortgage it held on the property. Obviously, the Dierdorffs' statement was correct to the extent that the Riggins had discharged their $27,700.00 obligation to the Dierdorffs, but, even so, any title taken by the Riggins from the Dierdorffs was still subject to Savers' note and mortgage. When the Riggins defaulted in their payments to Savers in May 1988, Savers was certainly entitled to foreclose on its mortgage. The Dierdorffs were also placed in the position that they had to protect their interests as set out in their contract with the Riggins and any obligations they had to Savers as a result of the Riggins' default in payments.

■ Ms. Riggin finally urges the trial court erred in holding three *ex parte* hearings, but the only one to which she interposed an objection concerned a hearing held on November 14, 1988, when the chancellor granted the Dierdorffs the right to enter the house on the property to winterize it. Although Ms. Riggin claims she had no notice of the hearing and was denied an opportunity to respond to the Dierdorffs' petition, the record reflects she formally replied to the petition. In any event, prior to the final trial, she was aware that, due to her default in payments, Savers had possession of the house and the locks had been changed. Nonetheless, she requested no hearing to correct any prejudice she may have suffered. Thus, Ms. Riggin had the opportunity to present her objections to the trial court, and in light of the court's foreclosure decree, which we believe is supported by sufficient evidence, she has failed to show any prejudice.

■ In Donald Riggin's two points for reversal, he, too, claims the chancery court lacked jurisdiction — an argument which we have already considered, discussed and rejected — but also he argues the trial court should have set aside the default judgment entered against him because he was never properly served with the complaint and summons filed in this matter. First, we note that while Mr. Riggin filed a motion to vacate the foreclosure decree entered in this case, the record reflects no hearing on his motion or a request by Mr. Riggin that the chancellor rule on it. The record does show that Savers had a process server attempt to serve Mr. Riggin in person on March 1, 1989, and that he refused to accept service. When Riggin refused, the process server, on his return and affidavit, noted that he left

 

the complaint, summons and *lis pendens* on a stump under a rock outside the gate to the Riggin property. Such service comports with those requirements of Rule 4(d)(1) of the Arkansas Rules of Civil Procedure. Mr. Riggin never questioned the return and affidavit of the process server. Thus, even if Mr. Riggin had asked the trial court to rule on his motion to vacate, it appears he was correctly served with process.[2]

For the reasons above, we affirm the trial court's decision.

---

[2] The Dierdorffs also obtained service upon Mr. Riggin by warning order under ARCP Rule 4(f), but it is needless to discuss this additional service except to say that it, too, complied with the requirements of the law under the circumstances presented.