William V. ALEXANDER *v.* TWIN CITY BANK

95-516                                    910 S.W.2d 196

Supreme Court of Arkansas
Opinion delivered November 20, 1995

*Randel Miller*, for appellant.

*Hilburn, Calhoon, Harper, Pruniski & Calhoon, Ltd.*, by: *Ernest H. Harper, Jr.*, and *James M. McHaney, Jr.*, for appellee.

DAVID NEWBERN, Justice. This is a mortgage foreclosure case brought by the appellee, Twin City Bank, against William V. Alexander, the appellant. Foreclosure was decreed, and the Chancellor granted a summary judgment to the Bank with respect to a counterclaim. The summary judgment on the counterclaim is the subject of this appeal. The judgment is affirmed.

The transaction which resulted in Mr. Alexander's liability to the Bank originated in 1984 when he and his partners, who were John Flake and others, executed a note in favor of the Bank to finance a Colorado condominium project. In 1987, after it was apparent that the project was in financial trouble, a document was executed which relieved each partner of joint and several liability for 100% of the note and substituted individual liability of each partner for 125% of each partner's pro rata share. Mr. Alexander's claim is that Mr. Flake "put" him in the real estate deal and assured him that his participation was without recourse. Mr. Alexander alleges that, by agreeing to the change in the partners' liability structure, the Bank reduced Mr. Flake's personal liability on the loan thus making it easier for Mr. Flake to avoid his obligation to hold Mr. Alexander harmless. In conjunction with his counterclaim in the Bank's foreclosure action, Mr. Alexander impleaded Mr. Flake. The third party claim alleged Mr. Flake had defrauded Mr. Alexander and had breached a fiduciary relationship with him. The counterclaim alleged the Bank had aided and abetted in the fraud and breach.

The Chancellor declined to hear the claim against Mr. Flake. That claim became the subject of separate litigation in Pulaski Circuit Court, and it resulted in a summary judgment in favor of Mr. Flake which we affirmed. *Alexander* v. *Flake*, 95-5 (October 30, 1995). In his letter opinion Circuit Judge Bogard concluded Mr. Alexander had been fully informed of the status of the real estate venture and there was no evidence to support his claim that Mr. Flake stood in a fiduciary relationship with him. In the penultimate paragraph of his opinion, Judge Bogard wrote:

> Finally, the Court notes that even [if] it were to conclude that there was a fiduciary duty breached by Flake or that he had defrauded Alexander, the three-year statute of limitations has clearly run. At the latest, Alexander was on notice and should have known of any alleged fraud or breach of fiduciary duty on Flake's part in 1987 when the Continuing Guaranty reduced Alexander's exposure on the note. Reasonable minds could not disagree . . . that Alexander's claims are barred pursuant to A.C.A. 16-56-105 and Flake is entitled to summary judgment for this reason alone.

■ Mr. Alexander's first point of appeal states that the

judgment on his counterclaim must be reversed in the event we reverse the Circuit Court judgment. As we affirmed that judgment, the point has become moot.

In his only other point of appeal, Mr. Alexander seeks reversal of the judgment on his counterclaim because "there were additional fact issues to be heard that were not relevant to the prior lawsuit and the issues were not actually litigated in that case." In his argument on this point, Mr. Alexander refers to FDIC documents which formed the basis of an affidavit of Ray Hackworth stating that the Bank was guilty of wrongdoing.

Mr. Hackworth, who has 30 years' experience in banking, stated he had examined FDIC reports on the Bank from 1985, 1987, and 1988, and that the FDIC had been critical of the Bank for being overextended on loans to Mr. Flake. He opined that the Bank had allowed a reduction in Mr. Flake's obligation to escape from regulatory violations. While this information tends to support Mr. Alexander's claim that the Bank had a motive for helping Mr. Flake, it does nothing to indicate that there was any fraudulent conduct with respect to Mr. Alexander or that there was any concealment which would have the effect of tolling the statute of limitations on whatever fraud or fiduciary breach claims he might have against the Bank.

In response to Mr. Alexander's claim of "additional facts not litigated," the Bank argued to the Chancellor, and it argues on appeal, that Mr. Alexander's claim against the Bank is barred by collateral estoppel. It is argued that, if Mr. Flake has been found innocent of any fraud or breach of a fiduciary relationship, the Bank cannot be held liable for aiding and abetting something that did not occur. The Chancellor granted summary judgment on the basis of collateral estoppel.

An element of the doctrine of collateral estoppel is that the issue sought to be barred from consideration not only have been actually litigated and decided previously but that the previous determination must have been essential to the judgment. *Fisher* v. *Jones*, 311 Ark. 450, 844 S.W.2d 954 (1993). Judge Bogard's conclusions that there was no fraud and no fiduciary relationship were not essential to his judgment in view of his ultimate pronouncement that the statute of limitations barred the claims whether or not they were true. *See John Cheeseman Truck-*

*ing, Inc.* v. *Pinson*, 313 Ark. 632, 855 S.W.2d 941 (1993). Our affirmance of the judgment was also on the basis of the statute of limitations.

■ Chancery cases are tried *de novo* on appeal. *Sunbelt Exploration Co.* v. *Stephens Prod. Co.*, 320 Ark. 298, 896 S.W.2d 867 (1995). Although we cannot affirm in this instance on the ground which apparently formed the basis of the Chancellor's decision, *i.e.*, collateral estoppel, we are free to affirm for a different reason. *Summers Chevrolet, Inc.* v. *Yell County*, 310 Ark. 1, 832 S.W.2d 486 (1992).

■ Just as in the Circuit Court claim against Mr. Flake, it is clear that the statute of limitations bars the claim against the Bank and thus that summary judgment in the Bank's favor was appropriate. Mr. Alexander's counterclaim addressed the statute of limitations problem by saying that the fraudulent acts were concealed from him and not discovered until September, 1991, thus tolling the statute of limitations until that time. There is no evidence whatever of concealment. The record before us indicates Mr. Alexander was kept informed of his liability, and nothing in the record shows he lacked knowledge of Mr. Flake's other relations with Bank officers. The record shows that, beginning in 1984, Mr. Alexander himself participated in a separate limited partnership venture which included Mr. Flake and Terrence Renaud, a Bank officer.

■ We decline to reverse and remand when we know that to do so would be a useless act. Perhaps the best example of a case in which we declined to do so is *Robb* v. *Hoffman*, 178 Ark. 1172, 14 S.W.2d 222 (1929). In that case the Chancellor had erroneously refused to determine the interest of one of the parties to land after determining a lien issue. We wrote, "To reverse the case and remand it with directions to determine that question might cause another appeal, and would be a useless and expensive procedure to all parties concerned. We therefore proceed to determine that question." *See also Washington Regional Med. Center* v. *Medical Care Int'l, Inc.*, 289 Ark. 198, 711 S.W.2d 457 (1986)(useless to remand for transcription of public hearings if no fact issue on appeal); *Borengasser* v. *Chatwell*, 207 Ark. 608, 182 S.W.2d 608 (1944)(no need to remand to chancery court to sell pursuant to equitable lien as satisfactory sale con-

ducted in law court); *Teegarden* v. *Director, Ark. Emp. Sec. Div.*, 267 Ark. 893, 591 S.W.2d 675 (Ark. App. 1979)(useless gesture to remand where employee-claimant could add nothing to the record).

██ Given our perception that the record in this case is complete, with Mr. Alexander's best effort having been made at demonstrating his claim against the Bank, we conclude that to reverse and remand because the doctrine of collateral estoppel was misapplied by the Chancellor would be a useless gesture. Just as in *Alexander* v. *Flake*, it is clear that Mr. Alexander's claims arising from a transaction evidenced by documents of 1984 and 1987 are barred by the three-year statute of limitations expressed in § 16-56-105, given the fact that his counterclaim was not filed until March 16, 1993.

Affirmed.

CORBIN, J., not participating.