RMP RENTALS *v.* METROPLEX, INC.

03-569 146 S.W.3d 861

Supreme Court of Arkansas
Opinion delivered February 12, 2004

*Warner, Smith & Harris, PLC,* by: *Jason T. Browning,* for appellant.

*Walters, Hamby & Verkamp,* by: *Michael Hamby,* for appellee.

BETTY C. DICKEY, Chief Justice. This case essentially presents one issue on appeal: whether our materialmen's lien statute, Ark. Code Ann. § 18-44-101(a) (Repl. 2003)[1], controls over a forum-selection clause in a contract. We accepted certification from the Court of Appeals pursuant to Sup. Ct. R. 1-2(b)(1) and (4) as presenting an issue of first impression involving a substantial issue of public interest. We affirm.

Appellant RMP Rentals, LLC d/b/a RMP Developments, Inc., hereafter RMP, is a general contractor with its corporate office located in Louisiana. RMP is in the business of constructing post office buildings on property it owns, which it then leases to the United States Postal Service. The appellees are subcontractors Metroplex, Inc., and Bobby Joe Williams. Metroplex is an electrical subcontractor located in Arkansas, engaged in the business of installing electrical services, including wiring panels and fixtures. Williams is an Oklahoma subcontractor who is in the business of pouring concrete slab, curbing, and parking lots. After contracting with the Postal Service to construct a post office in Greenwood, Sebastian County, Arkansas, RMP contracted separately with the appellees to provide electrical and concrete services, respectively, to the Greenwood post office. RMP executed the contracts in Louisiana. Each contract contained identical forum-selection clauses, which read as follows:

---

[1] Every contractor, subcontractor, or material supplier ... who supplies labor, services, material, fixtures, engines, boilers, or machinery in the construction or repair of an improvement to real estate ... by virtue of a contract with the owner, proprietor, contractor, or subcontractor, or agent thereof, upon complying with the provisions of this subchapter, shall have, to secure payment, a lien upon the improvement and on up to (1) acre of land upon which the improvement is situated, or to the extent of any number of acres of land upon which work has been done or improvements erected or repaired. § 18-44-101(a).

> The parties agree that the sole and exclusive forum *for any civil suit* arising out of obligations created by this Agreement shall be the Ninth Judicial District Court in the Parish of Rapides, State of Louisiana.

> This Contract and *any actions* arising therefrom must be interpreted and construed solely in accordance with the laws of the state of Louisiana. (Emphasis added).

The relevant, procedural facts are as follows. In December of 2000, Metroplex filed a foreclosure complaint in the chancery court[2] of Sebastian County, against RMP for failure to pay on a percentage of the work completed. Based on a previously filed materialmen's lien in Sebastian County, Metroplex sought a judgment on the lien for $17,963.86, and foreclosure of RMP's Arkansas property. Metroplex named Williams as a separate defendant and a potential lienholder, and claimed priority over the Postal Service and equal priority with Williams. In response, RMP filed a motion to dismiss, challenging *inter alia* the court's subject-matter jurisdiction, Ark. R. Civ. P. 12(1), based on the forum-selection clause in its contracts. In addition to copies of the contracts with Metroplex and Williams, RMP attached two orders of dismissal from the county's separate circuit courts, enforcing the forum clause against Williams and another subcontractor for the same building. Williams then filed a cross-claim against RMP, asserting claims similar to those of Metroplex and seeking $18,825.06 on its lien and foreclosure. RMP filed a similar motion to dismiss Williams's foreclosure complaint.

Following the issuance of a letter opinion, the trial court entered an order denying RMP's motions to dismiss, and the parties proceeded to a bench trial on the appellees' claims. Subsequently, the trial court entered judgment on behalf of the appellees in the amounts sought on their liens, subject to the superior priority of Red River Bank on its construction-money mortgage in the sum of $1,279,028.41. Further, the court awarded each of the appellees prejudgment interest, $6,000 in attorney fees, all costs, and ordered foreclosure on the property. In granting the judgment, the trial court relied on § 18-44-127(a), which provides that "the court shall ascertain by a fair trial, in the usual way, the amount of the indebtedness for which the lien is prosecuted and

---

[2] This cause of action was filed prior to the effective date of Amendment 80, which merged courts of equity and law.

may render judgment therefor in any sum not exceeding the amount claimed in the demand filed with the lien, together with interest and costs." The court found that it would be neither fair nor reasonable to require the subcontractors seeking to proceed on a materialmen's lien under Arkansas law on property located in Arkansas to first litigate the amount of the claim in Louisiana, and then come back to an Arkansas court for execution against the land. In sum, the trial court found that in the interest of substantial justice, the matter should be heard in Sebastian County.

When a party appeals an adverse ruling on a motion brought under Ark. R. Civ. P. 12, this court treats the facts alleged in the complaint as true and views them in a light most favorable to the party who filed the complaint. *Newton v. Etoch*, 332 Ark. 325, 965 S.W.2d 96 (1998); *Van Dyke v. Glover*, 326 Ark. 736, 934 S.W.2d 204 (1996). Chancery cases are tried *de novo* on appeal, and the appellate court is free to affirm for a different reason. *Alexander v. Twin City Bank*, 322 Ark. 478, 910 S.W.2d 196 (1995). Where the facts are not in dispute and the issue is one of law, we determine whether the appellant was entitled to judgment as a matter of law. *Haase v. Starnes*, 323 Ark. 263, 915 S.W.2d 675 (1996).

Choice-of-forum clauses in contracts have generally been held binding, unless it can be shown that the enforcement of the clause would be unreasonable and unfair. *Nelms v. Morgan Portable Bldg. Corp.*, 305 Ark. 284, 808 S.W.2d 314 (1991); *SD Leasing, Inc. v. Al Spain & Assoc., Inc.*, 277 Ark. 178, 640 S.W.2d 451 (1982). Nonetheless, the determination of subject-matter jurisdiction is paramount. Parties may by agreement consent to personal jurisdiction in a given court, but subject-matter jurisdiction cannot be conferred merely by agreement of the parties. *See Hardy Construction Co., Inc. v. Arkansas State Highway & Transportation Dept.*, 324 Ark. 496, 922 S.W.2d 705 (1996) (chancery court had jurisdiction to enforce contracts pursuant to the Uniform Arbitration Act). While a forum-selection clause implies consent as to personal jurisdiction, *SD Leasing, Inc., supra; St. Paul Fire & Marine Ins. Co. v. Courtney Enter., Inc.*, 270 F.3d 621 (8th Cir. 2001), it cannot confer subject-matter jurisdiction over *in rem* proceedings. *Publix v. Cheesbro Roofing, Inc.*, 502 So.2d 484 (Fla. 5th Dist. Ct. App. 1987).

Here, RMP argues extensively that under *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), its forum-selection

clause meets the requirements for minimum contacts. But that is not the issue here, nor do we disagree with RMP's argument. It is correct that under the clause, the Louisiana court may have subject-matter jurisdiction to award the appellees an *in personam* judgment equal to the amount of their liens, but that is not what the trial court determined and that is not what we decide here. Only an Arkansas court has subject-matter jurisdiction to enforce the liens and to order foreclosure on real property located within its borders. Specifically, "[t]he chancery court of the county where the property is situated and on which a lien created under § 18-44-101 *et seq.* is attached shall have exclusive jurisdiction to enforce the lien." § 16-13-304(c) (Repl. 1999, repealed 2003).

An *in rem* action is one in which the court is required to act directly on property or on title to property. *Id.* In *Publix SuperMarkets, Inc., supra,* the Florida court was faced with a similar issue. There, a roofing subcontractor had entered a contract containing a clause establishing a specific county as the forum for "any action" brought under the contract. Subsequently, the subcontractor filed to enforce its mechanic's lien and to foreclose in the county where the land was located. In affirming the denial of the land owner's motion to transfer to the county specified in the contract, the Florida court held that pursuant to statute, an agreement that has the effect of placing venue in a county, other than the one in which the land to be foreclosed is located, is ineffective because such an action requires *in rem* court jurisdiction, and only a court with geographic jurisdiction over the county where the land is located has *in rem* jurisdiction. In so holding, the court noted that foreclosure of land based on a mechanic's lien is analogous to foreclosure of a mortgage on land by seeking to judicially convert a lien interest against title to land, into a legal title to land. The result, the court found, is that the court is required to act directly on the title to the property. *Id.* We agree. Under our statutes, a judicial proceeding on a materialmen's lien as to land is an *in rem* proceeding.

RMP characterizes the cause of action against it as one for breach of contract and for damages "arising out of obligations created" by the contract. However, a review of the appellees' complaints shows that the appellees filed a "foreclosure

complaint."[3] While the claim had its genesis in the contract with RMP, the appellees, as materialmen, had a statutory right to seek *in rem* relief: that is judgment on their liens previously filed pursuant to Arkansas law, and foreclosure on RMP's real property located in Arkansas. Section 18-44-101(a) gives the appellees an absolute right to file such a lien. RMP argues that by limiting the jurisdiction to a particular "venue" (Louisiana), the forum clause does not eliminate the appellees' right to redress, but that it merely establishes the forum where redress can be sought. But RMP ignores the fact that the property is not located in Louisiana. Nor does RMP claim that the appellees have a right under Louisiana law to file a materialmen's lien in that forum, nor a right under Louisiana law to seek enforcement of their liens that are filed in Arkansas. *Cf. Three Sisters Petroleum, Inc. v. Langley*, 348 Ark. 167, 72 S.W.3d 95 (2002) (Louisiana court had both subject and personal jurisdiction to determine whether a contract existed to purchase leases on oil wells located in Arkansas, and if so, to grant specific performance). In sum, as to the appellees' liens, the choice-of-law provision in RMP's contract is meaningless.

 RMP argues that the forum clause is reasonable and fair because the appellees could litigate on the contract in Louisiana and then seek to enforce their liens in Arkansas. First, this ignores our holding that the Sebastian County court had sole jurisdiction over the *res* of the appellees' complaint. Second, the argument ignores the fact that the appellees have fifteen months from the time the lien is filed to institute an action on the lien as required by § 18-44-119. As the appellees point out, even if they could register a foreign judgment obtained in Louisiana and then execute on it in Arkansas, it is highly probable that, in the interim, the land could be transferred to a third party or further encumbered, thereby defeating the immediacy of their lien. Additionally, RMP's argument disregards our well-established policy that piecemeal litigation is to be avoided. *Fisher v. Chavers*, 351 Ark. 318, 92 S.W.3d 30 (2002). Finally, under the cleanup doctrine, the chancery court had subject-matter jurisdiction over the entire action. *Burns v. First Nat'l. Bank*, 336 Ark. 406, 985 S.W.2d 747 (1999); *Riggin v. Dierdorff*, 302 Ark. 517, 790 S.W.2d 897 (1990).

---

[3] RMP concedes in its brief that seeking a materialmen's lien and breach of contract are two separate causes of action.

The dissent cites *A.C.E. Elevator Co., Inc. v. V.J.B. Construction Corp.*, 192 Misc.2d 258, 746 N.Y.S.2d 361 (N.Y. Sup. Ct. 2002), in support of its position that the forum clause should be enforced. But that case is distinguishable because the language in the New York statute provided that the place of trial in actions affecting title, possession, use, or enjoyment of real property "shall" be in the county where the property is located. Notwithstanding the "seemingly mandatory nature" of this statute, the New York court relied instead on another statute providing that a written agreement fixing the place of trial "shall be enforced upon a motion for change of place of trial." There, the New York court found that the parties' agreement to venue "trumped" the statute placing venue in the county where the land was located. In our case, § 16-13-304(c) was clear that the court of the county where the property is situated "shall have exclusive jurisdiction to enforce the lien." RMP cites to no other statute that would allow jurisdiction outside of Sebastian County. Further, unlike the present case, in none of the cases cited by the dissent was the issue of subject-matter jurisdiction raised.

RMP makes much of the fact that two circuit courts in Sebastian County had previously dismissed Williams's and another subcontractor's complaints, enforcing the forum-selection clause. But a review of those orders shows that the cause of action there was for breach of contract. There, the subcontractors sought only damages based on the terms of the contract. No *in rem* action or remedy was sought.[4]

 As noted above, the trial court specifically found that it was neither fair nor reasonable to require the appellees seeking to proceed on materialmen's liens under Arkansas law against real estate located in Arkansas to first litigate the amount of their claim in Louisiana, and then to come back to court in Arkansas for execution against the land. A contractual choice of forum should be held unenforceable if enforcement would contravene a strong public policy of forum, whether declared by statute or by judicial decision. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972). For the reasons cited above, we agree with the

---

[4] RMP also makes much of the fact that the appellees did not attach copies of the contracts to their foreclosure complaints. The appellees complied with § 18-44-117 by filing an "... account of the demand due or owing ...." *See also* § 18-44-122. In sum, as to the lien and foreclosure, attachment of a contract was unnecessary to the appellees' filings.

trial court's results, and reaffirm this court's precedent that parties to a contract may agree as to personal jurisdiction if fair and reasonable, but that they cannot agree as to subject–matter jurisdiction. As a matter of law, we hold that the mechanics' and materialmen's lien provisions of §§ 18-44-101—135, as to real property located within Arkansas, control over a forum–selection clause.

In so holding, we emphasize that we are not in any way overruling *Nelms v. Morgan Portable Bldg. Corp.*, 305 Ark. 284, 808 S.W.2d 314 (1991) and *SD Leasing, Inc. v. Al Spain & Assoc., Inc.*, 277 Ark. 178, 640 S.W.2d 451 (1982). Where the court has subject–matter jurisdiction, forum–selection clauses are enforceable if enforcement would be fair and reasonable.

Affirmed.

CORBIN and HANNAH, JJ., dissent.

DONALD L. CORBIN, Justice, dissenting. I dissent from the majority's conclusion that the Louisiana courts lack subject-matter jurisdiction of this case. Although at first glance this case looks like an *in rem* proceeding, it is really an action for breach of contract. The complaint filed by Appellee Metroplex, Inc.,[1] first requests a judgment against Appellant RMP Rentals, LLC, for its breach of contract for failing to pay Metroplex for its electrical work. The complaint then requests that the judgment be declared a lien on the real property. Finally, in the event the judgment is not paid in a timely manner, the complaint requests that the real property be sold under foreclosure sale to satisfy the judgment. The way I see it, the essence of this case is the claim for breach of contract, which is exactly the type of claim that the parties agreed to litigate in the courts of Louisiana. For this reason, I would uphold the parties' agreement and require them to litigate the issue of breach in Louisiana.

This court has only dealt with forum clauses twice. *See Nelms v. Morgan Portable Bldg. Corp.*, 305 Ark. 284, 808 S.W.2d 314 (1991); *SD Leasing, Inc. v. Al Spain & Assoc., Inc.*, 277 Ark. 178, 640 S.W.2d 451 (1982). In both cases, this court held that such clauses are enforceable if they are fair and reasonable. In *Nelms*, this court held:

---

[1] The cross–claim filed by Appellee Bobby Joe Williams contains the same three–part request.

> Such choice of forum clauses in contracts have generally been held binding, *unless it can be shown that the enforcement of the forum selection clause would be unreasonable and unfair.*

305 Ark. at 289, 808 S.W.2d at 316 (emphasis added). To support this holding, this court relied on the Supreme Court's holding in *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972).

In *M/S Bremen*, the Court reversed the Fifth Circuit's refusal to enforce a forum clause in a shipping contract that named London, England, as the forum of choice. In doing so, that Court noted that, historically, such provisions had been viewed as contrary to public policy, because they tended to oust a court of jurisdiction. However, the more modern trend "is that such clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *Id.* at 10 (footnote omitted). Thus, the burden is on the party seeking to avoid enforcement of the forum clause to prove that the clause is unfair and unreasonable. Because Appellees are the resisting parties in this case, they bore the burden of showing that the forum clause was unreasonable and unfair.

The question then is what is meant by unreasonable and unfair. The answer is that it depends upon the factual circumstances of each case. However, claims of inconvenience or a waste of judicial resources do not rise to the level of being unreasonable and unfair. The *M/S Bremen* Court specifically rejected the view that a forum clause may be unreasonable if the chosen forum is inconvenient, because the parties contemplated such inconvenience when they entered into the agreement. The Court explained:

> *Whatever "inconvenience"* Zapata would suffer by being forced to litigate in the contractual forum as it agreed to do *was clearly foreseeable* at the time of contracting. In such circumstances it should be incumbent on the party seeking to escape his contract to show that *trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court.* Absent that, there is no basis for concluding that it would be unfair, unjust, or unreasonable to hold that party to his bargain.

*Id.* at 17-18 (emphasis added). Thus, for a forum clause to be unreasonable or unfair, it must do more than inconvenience a party; it must effectively deprive the party of its day in court.

The Court expanded upon its holding in *M/S Bremen* in *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991). There, a passenger on one of Carnival's ships brought suit in her home state of Washington for personal injuries arising out of an accident that occurred during the cruise. Carnival moved to dismiss the action on the ground that the passenger's contract ticket contained a forum clause requiring all suits to be brought in Florida. The Ninth Circuit refused to enforce the forum clause due to the unequal bargaining power of the parties and the lack of negotiations involved in the contract. The Court reversed the circuit court's holding on the ground that Florida was not a "remote alien forum," as Carnival's principle place of business was in Florida, most cruises departed from and returned to Florida, and the accident occurred off the coast of Mexico. *Id.* at 594 (quoting *M/S Bremen*, 407 U.S. 1, 17). The Court held that the passenger had failed to meet her heavy burden of proof and, instead, had offered only evidence that would demonstrate inconvenience. The Court held further that there was no evidence that Carnival had chosen the forum of Florida for the purpose of discouraging passengers from pursuing legitimate claims or that Carnival had obtained the passengers' accession to the clause by fraud or overreaching.

The contracts at issue in this case unmistakably state that the parties agree to bring any civil suit arising under the contract in the courts of Rapides Parish, Louisiana. Under this court's case law and that of the Supreme Court, Appellees, as the resisting parties, bore the heavy burden of demonstrating that the clause was unreasonable and unfair, *i.e.*, that the forum chosen was so gravely inconvenient or difficult that they would have been effectively deprived of their day in court. Appellees have not met this heavy burden. Appellees failed to offer any evidence to support their claim that enforcement of the forum clause would be unfair and unreasonable. Nor did they offer evidence of fraud on RMP's part in obtaining the agreement or that RMP's selection of Louisiana was made for the purpose of discouraging Appellees from pursuing legitimate claims against it. Moreover, Appellees did not offer any evidence showing that the forum of Louisiana was a remote alien forum lacking minimum contacts with the parties or the contract.

Instead, Appellees merely claimed that the chosen forum would be inconvenient, because Louisiana could not enforce their liens on RMP's property. Appellees argued, and the trial court agreed, that it would be a waste of judicial resources to require Appellees to first litigate the breach-of-contract claim in Louisiana

and then litigate the enforcement of their liens in Arkansas. However, the fact that Appellees may have to take additional steps to enforce their liens hardly demonstrates that they will be deprived of their day in court.

The case of *A.C.E. Elevator Co., Inc. v. V.J.B. Construction Corp.*, 192 Misc. 2d 258, 746 N.Y.S.2d 361 (N.Y. Sup. Ct. 2002), is instructive. There, a contractor filed a mechanic's lien and foreclosure action in Kings County for work it had done on a construction project. The owner moved to have the case removed to New York County, pursuant to a forum clause in the parties' contract. The contractor objected on the ground that the land was situated in Kings County and that state statute required all foreclosure actions to be brought in the county in which the land is situated. The court ruled that the forum clause was valid and enforceable and that it trumped the state venue statute. In so holding, the court rejected the contractor's contentions that enforcing the forum clause (1) would be inconvenient and result in multiple suits, and (2) would impair its rights under the lien laws. The court explained:

> With regard to the multi-county scenario, I have no doubt that this creates some difficulties to a foreclosing lien holder who will be forced to proceed through various procedural hoops and submit filings in two counties. For example, if a trial in New York County results in a judgment of foreclosure, [the contractor] will have to obtain a certified copy of the judgment and file it in Kings County in order to enforce the judgment. *However, whatever burden is imposed by these additional procedural hoops is a burden of [the contractor's] own creation and one arising out of its decision to enter into the subject construction contract. I also note that, to the extent that [the contractor] will be compelled to perform additional procedural steps to enforce its lien, this is hardly tantamount to losing its rights under the Lien Law, as it has claimed.*

*Id.* at 262-63, 746 N.Y.S.2d at 364 (citation and footnote omitted) (emphasis added).

The majority concludes that the decision in *A.C.E. Elevator* is distinguishable, in that New York statutory law provided that a written agreement fixing the place of trial shall be enforced upon a motion for change of venue. The majority then states that our law in effect at the time that this case was filed made it clear that the chancery court in the county where the property is located has exclusive jurisdiction to enforce a lien on the property. This is a

distinction without a difference, as the majority fails to recognize the significance of the New York holding, which is that parties who agree in writing to take their disputes to a particular court must do so, even if a mechanic's or materialmen's lien is part of the remedy.

From my view, the present case is comparable to the situation presented in *A.C.E. Elevator*. Both cases involve (1) contracts with forum clauses; (2) contractors alleging that they were not paid according to the contracts; and (3) the use of mechanic's or materialmen's liens to ensure payment under the contracts. The only real difference is that in this case, the forum clause placed venue in an adjacent state, rather than an adjacent county. Despite this minor difference, the reasoning set forth in that case is equally sound when applied to this case. Under the forum clause in this case, Appellees were required to bring their breach-of-contract claim in Louisiana. The fact that they may be faced with having to bring a second action in Arkansas to pursue their statutory lien rights does not render the forum clause unfair and unreasonable. Whatever inconvenience that was created by these additional steps is of the Appellees' own making, and they must honor the bargain that they struck. As the Supreme Court observed in *M/S Bremen*, 407 U.S. 1, such inconvenience was foreseeable at the time of the contracting, and it falls well short of depriving Appellees of their day in court.

The majority's characterization of this case as purely a foreclosure action misses the mark. True, the complaint is styled "FORECLOSURE COMPLAINT." However, a cursory review of the complaint reveals that it is, in reality, an action for breach of contract. The liens and the attempt to foreclose on them are merely remedies for the breach of contract. In other words, there can be no foreclosure on the liens without first establishing a breach of contract. By refusing to examine the contents of the complaint, the majority has effectively placed form over substance, something this court has traditionally refused to do. *See, e.g., Dodge v. Lee*, 352 Ark. 235, 100 S.W.3d 707 (2003) (holding that the trial court erred in looking only to the title of the complaint, while ignoring its contents); *Glover v. Woodhaven Homes, Inc.*, 346 Ark. 397, 57 S.W.3d 211 (2001) (holding that the rights of the parties must not be sacrificed by placing form over substance); *Wise Co., Inc. v. Clay County Circuit Court*, 315 Ark. 333, 869 S.W.2d 6 (1993) (denying a writ of prohibition where substance of the petition revealed that the action was essentially an improper appeal

from the denial of summary judgment); *Cornett v. Prather*, 293 Ark. 108, 737 S.W.2d 159 (1987) (holding that courts should not be guided blindly by titles but should look to the substance of pleadings to ascertain what they seek); *Jack Wood Constr. Co., Inc. v. Ford*, 258 Ark. 47, 522 S.W.2d 408 (1975) (holding that this court regards the substance of pleadings, rather than their label). ·

The majority also states that Appellees, as materialmen, have an absolute right to file a lien on the real property under Ark. Code Ann. § 18-44-101(a) (Repl. 2003). While I do not disagree with this statement, as far as it goes, I disagree with the implication that such a statutory right cannot be bargained away. RMP's point is well taken that by agreeing to pursue any civil suit arising out of the contract in Louisiana, Appellees chose to limit their right to pursue materialmen's liens, at least until the underlying cause of action may be determined by the courts of Louisiana. In this respect, I agree with the New York court that requiring Appellees to take additional steps to enforce their liens, pursuant to their own bargain, does not equate to stripping them of their statutory rights under our lien laws.

Moreover, in my opinion, there is no merit to Appellees' claim that their materialmen's liens will be substantially impaired if the forum clause is enforced. The facts of this case demonstrate that Appellees succeeded in filing their liens against RMP's property, and those liens remain on file with the circuit clerk. Additionally, they commenced their suit against RMP within the fifteen months provided in Ark. Code Ann. § 18-44-119 (Repl. 2003). Thus, for all practical purposes, Appellees' lien rights have been preserved and will not be affected by requiring them to litigate the breach issue in Louisiana, as they agreed to do when they signed the contract and accepted the work. In the event that the Louisiana court finds in their favor, and in the event that RMP fails to satisfy the judgment, Appellees may then pursue their action in Arkansas to enforce their liens.

In sum, while I agree with the majority that foreclosure proceedings are *in rem*, I disagree with its conclusion that Louisiana courts lack subject-matter jurisdiction over the claims made in this case. This is a multi-step process. The first and most important step requires a determination of whether RMP breached the terms of its contracts with Metroplex and Williams. This determination can be made by any court having jurisdiction over the parties, regardless of where the land is situated. Here, Louisiana has jurisdiction over the parties, as RMP is a Louisiana company; the contracts

were executed by RMP in Louisiana and were approved and administered out of Louisiana; and the parties agreed in their contracts that Louisiana would have exclusive jurisdiction over claims arising out of obligations under the contract. *See Nelms*, 305 Ark. 284, 808 S.W.2d 314 (citing *International Shoe Co. v. Washington*, 326 U.S. 310 (1945)). Depending on how the Louisiana courts resolve the first step, the remainder of the case may or may not present an *in rem* proceeding. By ruling as it does today, the majority has put the proverbial cart before the horse. Accordingly, I dissent.

HANNAH, J., joins in this dissent.