(143 P.3d 50)
No. 94,191

NELSON ENERGY PROGRAMS, INC., *Appellant,* v. OIL & GAS TECHNOLOGY FUND, INC., *et al., Appellees.*

Opinion filed August 25, 2006.

*John R. Horst*, of John R. Horst, P.A., of Caney, and *Gordon B. Stull*, of Stull & Rein, L.L.C., of Pratt, for appellant.

*Jeffrey A. Chubb*, of Scovel, Emert, Heasty & Chubb, of Independence, for appellees.

Before BUSER, P.J., LARSON, S.J. and WAHL, S.J.

BUSER, J.: This appeal presents for our consideration the proper forum for a partition action wherein the plaintiff claims to own oil and gas leasehold interests in Kansas derived from an investment agreement with a forum selection clause providing for venue in Nevada. The district court dismissed the action, concluding the forum selection clause was enforceable and the plaintiff had no partitionable interest. We reverse and remand for further proceedings, concluding the Kansas venue statute and long-standing case law requiring local venue for actions affecting real property may not be superseded by agreement and the allegations of plaintiff's amended petition support a partitionable interest under Kansas law.

## Factual and Procedural Background

Nelson Energy Programs, Inc. (Nelson) entered into agreements with Oil & Gas Technology Fund, Inc. (OGTF) to invest in a coalbed methane redevelopment project involving the exploration and

development of 5,200 acres in Chautauqua County, Kansas, covered by oil and gas leases purportedly held by OGTF. The principal agreements between the parties were each entitled "Natural Gas Sublease Agreement" and provided in material part:

"Each of the lots and well locations therein are offered to Lessee for exploration purposes on the basis of Lessee investing 100% of the Working Interests costs associated in the drilling and or completion of each well listed . . . in return for [Nelson] earning 75% of the Working Interest revenues in each well, before payout and 50% of each well following payout subject to all overriding royalties. . . .
. . . .
". . . OGTF has agreed to convey and hereby does grant, sell and convey to [Nelson] his undivided percentage share in and only to the well bore located within subject Lots and limited to the depths drilled by the locations as set forth . . . and including each successive exploratory or development well drilled and completed pursuant to the terms set forth herein this agreement."

The Sublease Agreements also contained the following provision:

"**Application of Nevada Law**. This agreement, and its application or interpretation, shall be governed by the laws of the United States of America and the State of Nevada. Venue for any action arising hereunder shall lie in Washoe County, Nevada."

Pursuant to the Sublease Agreements, Nelson invested $697,247 to be utilized by OGTF to pay for 100% of the costs of drilling and completing eight wells. Not all of the wells were drilled and completed, and for this and other reasons not pertinent to this appeal, Nelson came to believe that it had been defrauded in the transaction.

Nelson initially filed suit against OGTF and related parties in Chautauqua County District Court, alleging fraud and securities violations and seeking rescission, injunctive relief, and partition of the leasehold interests. Prior to responsive pleadings being filed, Nelson voluntarily dismissed the bulk of its original action and filed an amended petition seeking only partition and an accounting. The amended petition included the following allegations:

"[Nelson] is the owner of a working interest in all of the oil and gas leases more particularly described on Exhibit 'A'. . . . [Nelson's] interests in the Oil & Gas Leases may not include each and every one of the Oil & Gas Leases but the exact

nature of Plaintiff's ownership will not be known until completion of discovery herein.

. . . .

"The Court should determine the names and ownership amounts of each owner of an interest in the Oil and Gas leaseholds.

. . . .

"The Court should make partition of the working interest of the Oil and Gas Leases, and equipment owned in connection therewith, in accordance with the interests of all of the owners thereof as determined by the Court."

OGTF moved to dismiss the amended petition on the sole basis that the forum selection clause in the Sublease Agreements required the action to be dismissed for lack of jurisdiction and venue. The district court granted the motion to dismiss, concluding in material part:

"The Court perceives that [Nelson] seeks to avoid removal of the whole case to Washoe County, Nevada, under the agreements' forum selection clauses by in essence, asking the Court to bifurcate from the rest of the conflicted issues at least the partition action so it can proceed in Chautauqua County, Kansas, where the affected acreage lies.

"This the Court declines to do.

"Doubtless [OGTF] has not performed as [Nelson] expected pursuant to the signed agreements. Indeed it appears from the Court's limited understanding of the facts pled herein, [Nelson] very well may have been swindled.

"But it is not clear to this Court that [Nelson] has a partitionable interest in Chautauqua County, Kansas, property.

"The Court sees no reason why that question, as well as all other legal and factual questions [Nelson] wishes to litigate should not be dealt with in the forum and law selected by the parties in the agreement."

Shortly after the dismissal, OGTF filed of record in the office of the Register of Deeds of Chautauqua County, assignments purporting to convey interests in and to the well bore of the completed wells on five of its leases to Nelson and others. Although Nelson brought this fact to the district court's attention by filing a motion for reconsideration and attaching copies of the recorded assignments, the district court adhered to its order of dismissal. Nelson appeals.

## Standard of Review

Although venue decisions are typically reviewed for abuse of discretion, *Schmidt v. Shearer*, 26 Kan. App. 2d 760, 765, 995 P.2d

381 (1999), appellate review is unlimited here because the district court's decision was based on a forum selection clause. See *Aylward v. Dar Ran Furniture Industries, Inc.*, 32 Kan. App. 2d 697, 698, 87 P.3d 341 (2004) (applying standard of review for interpretation of written instruments to review of forum selection clause); *K & V Scientific Co., Inc. v. Bayerische Motoren Werke*, 314 F.3d 494, 497 (10th Cir. 2002) (applying standard for interpretation of contractual provisions to review of forum selection clause). Appellate review is also unlimited to the extent the issue is "the district court's interpretation of the venue statute and its application." 5B Wright & Miller, Federal Practice and Procedure: Civil § 1352 (2004); see *Cooper v. Werholtz*, 277 Kan. 250, 252, 83 P.3d 1212 (2004) (appellate review of statutory interpretation is unlimited).

*Dismissal Based Upon the Forum Selection Clause*

1. Do Nelson's claims to partition arise from the Sublease Agreements?

We first consider Nelson's argument that its partition claim is "independent of any conflict or dispute arising out of the agreements between Nelson and OGTF." Although Nelson's claims may not have been "independent" of the Sublease Agreements prior to the execution and filing of record of five assignments, we agree that the execution and filing of these assignments may distance Nelson's partition claims from the forum selection clause in the Sublease Agreements under the doctrine of merger.

It is a general rule of law applicable to all contracts that prior stipulations and agreements are merged into the final formal contract or the deed, and when a deed is delivered and accepted as performance of a contract to convey property, the contract is presumed to be merged into the deed. See *Palmer v. The Land & Power Co.*, 172 Kan. 231, Syl. ¶ 2, 239 P.2d 960 (1952). Here, the obligations of OGTF pursuant to the Sublease Agreements were finally performed when formal assignments were executed, delivered, and recorded. The assignments conveying well bore interests carved out of Kansas oil and gas leasehold interests contained no forum selection clause.

Nelson's action to partition its oil and gas leasehold interests under the assignments did not arise under the Sublease Agreements; rather, it arises by virtue of common ownership of its property interests in Kansas. The right of partition enjoyed by cotenants in Kansas is considered an incident of common ownership and based on the equitable doctrine that it is better to have the control of property in one person than in several who may entertain divergent views with respect to proper control and management. See *Miller v. Miller*, 222 Kan. 317, 320, 564 P.2d 524 (1977).

Once OGTF's obligations under the Sublease Agreements were performed through the conveyance to Nelson of property interests by formal assignment, the covenants of the Sublease Agreements merged into those assignments and Nelson's partition rights derived from common ownership—not from contractual rights burdened by the forum selection clause. For this reason alone, the district court erred in denying Nelson's motion for reconsideration.

*2. Kansas law regarding the venue of actions affecting realty.*

Kansas has long required that actions affecting real property, including partition actions, take place in the county where the real property is located. K.S.A. 60-601; see Terr. L. 1858, ch. 11, sec. 45. This rule was codified after statehood, G.S. 1868, ch. 80, sec. 46, and in 1912 the Kansas Supreme Court explained the requirement as follows:

"So strict is this requirement that if a party seeks to recover the possession of land and it consists of separate tracts in two or more counties separate actions must be brought in the counties where they are situated. . . .

. . . .

"A party seeking to recover land can not compel another claiming interest in or title to it to litigate the title in any county except where the land is situated. Under the statute the subject of the action must be within the jurisdiction of the court, and no judgment which it can render in one county, determining title or right of possession, can affect land in a distant county any more than such a judgment could affect land in another state. A judgment affecting title to realty can only operate on the *res* that is within the jurisdiction of the court rendering it. A party may rely on what is shown by the records of the court having jurisdiction and may safely purchase an interest without looking to the records in courts in other counties or states. . . .

. . . .

"As the code specifically provides that actions for the recovery, partition, determination of an interest or sale of real property must be brought in the county where the real property is situated, . . . there can be no jurisdiction of the subject matter of such an action in any other county." *Martin v. Battey*, 87 Kan. 582, 588-90, 125 Pac. 88 (1912).

*Martin* shows the near equivalence under Kansas law of venue and subject matter jurisdiction when the subject of the litigation is land. While in many instances "[v]enue is not a jurisdictional matter but a procedural one," this appears to be the rule only "where real property is only incidentally affected and the action is transitory in nature." *Shutts, Executor v. Phillips Petroleum Co.*, 222 Kan. 527, Syl. ¶ 6, 567 P.2d 1292 (1977). Where the action regards land, it "must be brought in the county in which the land is located," and such venue cannot be changed by agreement because "the venue provisions . . . are jurisdictional, and jurisdiction of the subject matter cannot be waived by the parties." *Raynolds v. Row*, 184 Kan. 791, 795, 339 P.2d 358 (1959). An action regards land "if the subject of inquiry is a right or interest in land, and if the judgment in the case will operate directly upon this right or interest, or will determine in any form any such right or interest, or bar any defendant therefrom." 184 Kan. at 793.

Venue for claims arising from oil and gas leases, however, was historically a distinct case. See, *e.g.*, *Connell v. Kanwa Oil Inc.*, 161 Kan. 649, 653, 170 P.2d 631 (1946) (venue distinguished in such instances because "an oil and gas lease conveys no interest in the land therein described . . . and is personal property."). In 1953, the legislature then amended G.S. 1949, 60-501 and other venue statutes to include oil and gas leases as real property. See L. 1953, ch. 276, sec. 1. Before the amendment, G.S. 1949, 60-501 stated in part that actions "[f]or the partition of real property" must be brought in the county where the real property was situated, but after amendment the subsection applied to actions "for the partition of real property *or any estate or interest created by an oil, gas or mineral lease or an oil or gas royalty.*" (Emphasis added.) G.S. 1949, 60-501 (1961 Supp.). See *Suits v. Mobil Crude Purchasing Co.*, 182 Kan. 310, 314, 321 P.2d 167 (1958) (action for determination and recovery of an interest created by an oil, gas, or mineral

lease must be situated in the county of the real estate covered by such lease "[d]ue to legislative fiat").

These venue provisions were unchanged in the 1963 revision of the Code of Civil Procedure and are now codified in material part in K.S.A. 60-601. See L. 1963, ch. 303, sec. 60-601. The relevant portions of K.S.A. 60-601 are as follows:

"The term real property, as used in this section, includes any interest or estate created by an oil, gas or mineral lease, or an oil, gas or mineral royalty. Actions concerning real property must be brought in the county designated in this section.

. . . .

"(b) . . . The following actions must be brought in the county in which the real estate is situated . . . :

. . . .

(2) Actions for the partition of real estate or any estate or interest therein." K.S.A. 60-601(b)(2).

Since 1953, our venue statutes have considered oil and gas leasehold interests as realty. We conclude that long-standing Kansas law dictates that actions concerning real property, including oil and gas leasehold interests, should be litigated in the county where the property is situated.

*3. Bifurcating claims for determination of interests from claims for partition.*

We next consider the conflict between Kansas venue law and the forum selection clause in this case. OGTF concedes that "parties may not contract to establish jurisdiction of a local county action in a foreign state." It argues, however, that "[i]t has not been determined what interest [Nelson] has in the oil and gas lease in question." OGTF would have this initial question answered by the Nevada court pursuant to the forum selection clause, thus bifurcating this issue from the partition action.

We agree that a Nevada (foreign) court may not directly partition land located in Kansas. See *Hoppe v. Hoppe*, 181 Kan. 428, Syl. ¶ 4, 312 P.2d 215 (1957) ("While a court . . . acting upon the person of the defendant may decree a conveyance of land in another jurisdiction . . . neither the decree, nor any conveyance under it except by the party in whom title is vested, is of any efficacy beyond the jurisdiction of the court."). That being settled, we must decide

whether, as OGTF argues, the partition action should be bifurcated. Under this approach, OGTF would have the determination of interests under the Sublease Agreements handled by the Nevada court, and any eventual enforcement or partition would lie in Kansas with the Chautauqua County District Court.

The leading Kansas case discussing forum selection clauses is *Vanier v. Ponsoldt*, 251 Kan. 88, 833 P.2d 949 (1992). Relying on *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 32 L. Ed. 2d 513, 92 S. Ct. 1907 (1972), our Supreme Court upheld forum selection clauses which are "fair and reasonable." 251 Kan. at 101.

"Parties to a contract may choose the jurisdiction in which all actions or proceedings arising from their transaction shall be heard. The forum selected by the parties must bear a reasonable relationship to the transaction and the forum-selection clause in the contract must not have been entered into under fraud. . . ." 251 Kan. 88, Syl. ¶ 2.

We are not convinced the bifurcation suggested by OGTF would be fair and reasonable under these circumstances. See *Vanier*, 251 Kan. at 101. First, two of seven parties to the action may have a Nevada residence, but Nevada hardly bears a reasonable relationship to a transaction involving the solicitation of an investment by a Kansas investor in a Kansas development program in exchange for conveyance of Kansas property.

More importantly, however, is the close connection in a partition action between the findings which must be made regarding each party's interests and the resulting division of those interests. The Kansas partition statute directs that "[t]he judge shall first determine and make an order specifying the interest[s] of the respective parties and directing partition." K.S.A. 60-1003(c)(1). We construe this statute as envisioning a single judicial action that both determines the parties' interests and orders partition. It is doubtful that an equivalent result could be achieved in a fair, reasonable, and efficient manner through the successive involvement of courts in different jurisdictions.

For example, if the partition were evidently unfair or unreasonable in its execution because of circumstances not anticipated by counsel or the courts, the parties would face further rounds of appearing first before the Nevada court and then the Kansas court

to resolve the questions. Moreover, our Supreme Court has characterized the district court's "powers to make a just and equitable partition between the parties and to secure their respective interests" as "plenary." *Stratmann v. Stratmann*, 204 Kan. 658, 661, 465 P.2d 938 (1970). It would be difficult to exercise such plenary powers through orders from the courts of two jurisdictions, one to determine each party's interests and the other to secure those interests. These functions are so inextricably linked that bifurcation would be impractical, cumbersome, and unreasonable.

Our conclusion serves the interests of public notice as well. The Kansas partition statute, once again, directs that the judge should determine the parties' interests and make "an order specifying the interest of the respective parties and directing partition." K.S.A. 60-1003(c)(1). One order, filed of record in the county where the interests are located, would clearly provide far better notice than the procedure suggested by OGTF. And, if further clarification or amendment of the order were needed, public notice in Kansas would again be superior to the uncertainties of returning to Nevada for such proceedings.

This holding is consistent with authorities from other jurisdictions. For example, in *RMP Rentals v. Metroplex, Inc.*, 356 Ark. 76, 84, 146 S.W.3d 861 (2004), the Arkansas Supreme Court rejected a suggestion similar to that proposed by OGTF, specifically that the parties "could litigate on their contract in Louisiana and then seek to enforce the liens in Arkansas." 356 Ark. at 82. According to the Arkansas court, this violated its holding that the local court "had sole jurisdiction over the *res*." 356 Ark. at 82. The court also noted even if a Louisiana judgment could be registered and then enforced in Arkansas, "it is highly probable that, in the interim, the land could be transferred to a third party or further encumbered." 356 Ark. at 82. Finally, the court held the bifurcated approach "disregards our well-established policy that piecemeal litigation is to be avoided." 356 Ark. at 82; see also *McCloud Constr., Inc. v. Home Depot USA, Inc.*, 149 F. Supp. 2d 695, 701 (E.D. Wis. 2001) (federal court sitting in diversity refused to give effect to a Georgia forum selection clause based on a Wisconsin statute); *Omne Financial, Inc. v. Shacks, Inc.*, 460 Mich. 305, 311-

12, 596 N.W.2d 591 (1999) (Michigan court declined to read into the venue statute a consent for venue elsewhere.).

For all these reasons, we conclude that bifurcation is not appropriate. The essential nature of a partition action in Kansas dictates the judicial function of determining relative interests should not be separated from judicial protection and vindication of those interests in partition.

### Does Nelson Have a Partitionable Interest?

Nelson also challenges the district court's apparent conclusion that it has no partitionable interest in the Chautauqua County property, arguing that "[t]he nature and extent of Nelson's interests in the oil and gas leases in issue . . . is not an appropriate subject for resolution by summary dismissal, and is not a basis for judicial determination that the Court lacks jurisdiction at this early stage of the proceedings." We agree.

To the extent the district court dismissed Nelson's action based upon the understanding that Nelson had no partitionable interest, the court's dismissal must be characterized as a judgment on the pleadings that Nelson failed to state a claim for relief. See K.S.A. 60-212(b)(6), (c). The standards for the district court's review in this setting are well established.

" ' "When a motion to dismiss under K.S.A. 60-212(b)(6) raises an issue concerning the legal sufficiency of a claim, the question must be decided from the well-pleaded facts of plaintiff's petition. . . ."

" ' "Disputed issues of fact cannot be resolved or determined on a motion to dismiss for failure of the petition to state a claim upon which relief can be granted. The question for determination is whether in the light most favorable to plaintiff, and with every doubt resolved in plaintiff's favor, the petition states any valid claim for relief. Dismissal is justified only when the allegations of the petition clearly demonstrate plaintiff does not have a claim."

" ' "In considering a motion to dismiss for failure of the petition to state a claim for relief, a court must accept the plaintiff's description of that which occurred, along with any inferences reasonably to be drawn therefrom." ' [Citations omitted.]" *Blevins v. Board of Douglas County Comm'rs*, 251 Kan. 374, 381, 834 P.2d 1344 (1992).

In addition to the allegations in Nelson's amended petition, wherein Nelson claims to be "owner of a working interest in all oil

and gas leases," the Sublease Agreements purport to convey to Nelson "[its] undivided percentage share in and only to the well bore." Nelson also attached to its motion for reconsideration copies of five recorded assignments purporting to convey an interest in the well bore of completed wells on some of the leases. OGTF responds on appeal that the assignments do not demonstrate a "possessory interest," citing *Mulsow v. Gerber Energy Corp.*, 237 Kan. 58, 60, 697 P.2d 1269 (1985). We disagree.

In *Mulsow* our Supreme Court simply held that a working interest owner of an oil and gas lease was not entitled to partition the overriding royalty interest. 237 Kan. at 63. Nelson, however, alleges that it is the owner of a working interest and seeks to partition the interests of all other cotenants. Moreover, the assignments that were recorded appear to create interests carved out of OGTF's oil and gas leasehold interests, but they are restricted to specific well bores with revenue interests dependent upon payout. We do not construe Nelson's interests as overriding royalty interests, nor do we construe Nelson's amended petition as seeking the partition of such overriding royalty interests. OGTF's reliance on *Mulsow* is misplaced.

From the well-pleaded facts of Nelson's amended petition, together with any reasonable construction of the Sublease Agreements amplified by the recorded assignments, and resolving every doubt in Nelson's favor, Nelson claims ownership of an estate or interest created by an oil, gas, or mineral lease and is expressly entitled to partition under K.S.A. 60-1003. Although OGTF may contend otherwise and may still prove such contention in proceedings on remand, it was premature for the district court to dismiss Nelson's amended petition as failing to state a claim on this basis.

We recognize that Nelson's claims in the amended petition seek not only partition but an accounting. Although a claim for an accounting standing alone might be entitled to different treatment under the forum selection clause, here the accounting issues are inextricably linked to the partition issues. The doctrine of ancillary venue allows claims to be tried together for reasons of judicial economy and efficiency, even though venue is not technically

proper for one or more of the claims. See 77 Am. Jur. 2d, Venue § 19, p. 647.

In summary, we conclude the district court erred in dismissing Nelson's action based either on the forum selection clause or on a mistaken understanding that Nelson failed to plead a partitionable interest. We remand for further proceedings in Chautauqua County District Court consistent with this opinion.

Reversed and remanded.